**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------- X

MATTHEW RONEN,                                      :

                                   Plaintiff,       :       Civil Case No.: 21-cv-02732 (RPK)
                                                    :       (RML)
                                                    :
          v.                                        :
                                                    :
REDROUTE, INC. and BRIAN SCHIFF, in his             :
individual and professional capacities,             :
                                                    :
                                   Defendants.      :
-----------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL**
<u>**PROCEDURE 12(b)(6)**</u>


**WIGDOR LLP**

Michael J. Willemin
Renan F. Varghese
John S. Crain

85 Fifth Avenue, Fifth Floor
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
rvarghese@wigdorlaw.com
jcrain@wigdorlaw.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT .........................................................................1

STATEMENT OF FACTS...................................................................................3

I.    REDROUTE RECRUITS AND HIRES MR. RONEN, WHO EXCELS AND
      RECEIVES PROMOTIONS.....................................................................3

II.   MR. RONEN COMPLAINS ABOUT REDROUTE'S DISCRIMINATORY
      POLICIES AND UNLAWFUL FIRING OF A PREGNANT EMPLOYEE....................5

III.  DEFENDANTS TERMINATE MR. RONEN .................................................6

IV.   THE INSTANT LITIGATION ......................................................................7

ARGUMENT ........................................................................................................8

I.    STANDARD OF REVIEW ..........................................................................8

II.   THE SAC STATES A CLAIM FOR CAREGIVER STATUS DISCRIMNATION
      UNDER THE NYCHRL ...............................................................................9

III.  THE SAC STATES CLAIMS FOR ASSOCIATIONAL DISCRIMINATION .............13

      A. Associational Discrimination Under Title VII.......................................13

      B. Associational Discrimination Based on Mr. Ronen's Wife's Pregnancy Under the
         NYSHRL.................................................................................................17

      C. Associational Discrimination Based on Mr. Ronen's Wife's Disability Under the
         NYSHRL and NYCHRL ........................................................................20

IV.   THE SAC STATES A CAUSE OF ACTION FOR RETALIATION ............................22

CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Page**

Adler v. S. Orangetown Cent. Sch. Dist.,
   No. 05 Civ. 4835 (SCR), 2008 WL 190585 (S.D.N.Y. Jan. 17, 2008)....................................15

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ....................................................................................................................8

Barrett v. Forest Lab'ys, Inc.,
   39 F. Supp. 3d 407 (S.D.N.Y. 2014)........................................................................................13

Billue v. Praxair, Inc.,
   No. 3:05 Civ. 00170 (JCH), 2007 WL 1231841 (D.Conn. Apr. 26, 2007)...............................24

Canales v. ACP Facility Servs., Inc.,
   No. 17  Civ. 6937 (DRH) (AYS), 2019 WL 1171479 (E.D.N.Y. Mar. 13, 2019) ....... 17, 18, 19

Chiara v. Town of New Castle,
   126 A.D.3d 111, 2 N.Y.S.3d 132 (2d Dep't 2015) ..........................................................17, 19

Clark Cty. Sch. Dist. v. Breeden,
   532 U.S. 268 (2001) ..................................................................................................................23

Cronin v. St. Lawrence,
   No. 08 Civ. 6346 (KMK), 2009 WL 2391861 (S.D.N.Y. Aug. 5, 2009).................................23

Curto v. Med. World Commc'ns, Inc.,
   388 F. Supp. 2d 101 fn. 2 (E.D.N.Y. 2005)..............................................................................9

Doe v. Columbia Univ.,
   831 F.3d 46 (2d Cir. 2016) ........................................................................................................8

Elaine W. v. Joint Diseases N. Gen. Hosp., Inc.,
   81 N.Y.2d 211 (1993)........................................................................................................18, 19

Felton v. Monroe Cmty. Coll.,
   528 F. Supp. 3d 122 (W.D.N.Y. 2021) ....................................................................................24

Figueroa v. City of New York,
   No. 05 Civ. 9594 (JGK), 2011 WL 309061 (S.D.N.Y. Feb. 1, 2011) .....................................21

Forrester v. Corizon Health, Inc.,
   752 F. App'x 64 (2d Cir. 2018)................................................................................................22

Garrett v. Garden City Hotel, Inc.,
   No. 05 Civ. 0962 (JFB) (AKT), 2007 WL 1174891 (E.D.N.Y. Apr. 19, 2007)......................23

Giordano v. City of New York,
   274 F.3d 740 (2d Cir. 2001) .................................................................................................21

Gorzynski v. JetBlue Airways Corp.,
   596 F.3d 93 (2nd Cir. 2010) .................................................................................................23

Guzman v. Crothall Healthcare Inc.,
   No. 17 Civ. 4306 (CBA) (PK), 2021 WL 5048993 (E.D.N.Y. Sept. 29, 2021).......................22

Hazeldine v. Beverage Media, Ltd.,
   954 F.Supp. 697 (S.D.N.Y. 1997)...........................................................................................21

Jackson v. Battaglia,
   63 F. Supp. 3d 214 (N.D.N.Y. 2014) ....................................................................................21

Laudadio v. Johanns,
   677 F. Supp. 2d 590 (E.D.N.Y. 2010)...................................................................................24

Morse v. Fidessa Corp.,
   84 N.Y.S.3d 50 (1st Dep't 2018) ...........................................................................................10

Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.,
   462 U.S. 669 (1983) ........................................................................................................14, 16

Nicastro v. Runyon,
   60 F. Supp. 2d 181 (S.D.N.Y. 1999)......................................................................................23

Palmer v. Cook,
   108 N.Y.S.3d 297 (N.Y. Sup. Ct. 2019)...................................................................................9

Pustilnik v. Battery Park City Auth.,
   147 N.Y.S.3d 357 (N.Y. Sup. Ct. 2021)...................................................................................9

Rasmy v. Marriott Int'l, Inc.,
   952 F.3d 379 (2d Cir. 2020) .................................................................................................22

Rodriguez v. Town of Ramapo,
   412 F. Supp. 3d 412 (S.D.N.Y. 2019)....................................................................................23

Schwab v. Smalls,
   et al., 435 F. App'x 37 (2d Cir. 2011) .....................................................................................8

Smiley v. Cassano,
    No. 10 Civ. 3866 (RJS), 2012 WL 967436 (S.D.N.Y. Mar. 21, 2012)....................................23

Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.,
    173 F.3d 988 (6th Cir. 1999) .........................................................................................13

Van Soeren v. Disney Streaming Serv.,
    No. 19 Civ. 10196 (NRB), 2020 WL 6131255 (S.D.N.Y. Oct. 16, 2020) .............................15

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015) ........................................................................................8, 22

Walsh v. Nat'l Computer Sys., Inc.,
    332 F.3d 1150 (8th Cir. 2003) .......................................................................................12

Ya-Chen Chen v. City Univ. of New York,
    805 F.3d 59 (2d Cir. 2015) ...........................................................................................22

Young v. United Parcel Serv., Inc.,
    575 U.S. 206, 135 S. Ct. 1338 (2015) ............................................................................16

Zarda v. Altitude Express, Inc.,
    883 F.3d 100 (2d Cir. 2018) ....................................................................................13, 14

Statutes

42 U.S.C. § 2000e ........................................................................................................2

42 U.S.C. § 2000e(k)...............................................................................................13, 15

N.Y. Code § 8-107(1)(a) ...............................................................................................9

N.Y. Exec. Law § 292(21)............................................................................................20

N.Y. Exec. Law § 300.................................................................................................17

N.Y. Exec. Law §§ 290 ..................................................................................................2

N.Y. Executive Law § 295.5 .........................................................................................17

Rules

Federal Rule of Civil Procedure 12(b)(6).........................................................................1

Regulations

N.Y. Comp. Codes R. & Regs. tit. 9, § 466.14........................................................................17, 18

Other Authorities

N.Y.C. Code § 8-102............................................................................................................9, 21

N.Y.C. Code § 8-130..........................................................................................................10, 12

New York City, N.Y., Code § 8-107(20) ....................................................................................20

Plaintiff Matthew Ronen ("Plaintiff") respectfully submits this memorandum of law in opposition to the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants RedRoute, Inc. ("RedRoute" or the "Company") and Brian Schiff (collectively, "Defendants") (the "Motion to Dismiss").

## PRELIMINARY STATEMENT

Mr. Ronen is a talented entrepreneur and business executive, with years of experience founding and running companies. In late 2020, Mr. Ronen began caring for his wife while she negotiated pregnancy complications and prepared to give birth to their child. Unfortunately, Defendants, particularly Schiff, had previously made it clear that they had no interest in allowing expectant parents the opportunity to care for their newborn children, having twice before terminated employees who they believed would need to take time away from work to take care of their children. Thus, while Mr. Ronen had no problem balancing his work and his relationship with his wife and expectant child, Defendants saw his need to care for his family as a liability that they refused to tolerate. Thus, beginning in December 2020, shortly after he had complained of Defendants' discriminatory practices towards others and informed them of his need for leave to care for his wife and expectant child, Defendants began a campaign of retaliatory and discriminatory conduct that culminated with the termination of his employment in January of 2021. Incredibly, RedRoute's CEO, Defendant Brian Schiff, attempted to defend the Company's discriminatory decision by claiming that it would be "better for" Mr. Ronen to be unemployed, expressing his belief that caregivers and spouses of pregnant women cannot devote themselves to a job.

In their motion to dismiss, Defendants primarily argue that Mr. Ronen, as an expectant father, was not a member of a protected class for purposes of Title VII of the Civil Rights Act of

1

1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. ("NYSHRL") and the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 et seq. ("NYCHRL").  To support their (incorrect) claim, Defendants argue that Title VII and the NYSHRL do not allow for claims of caregiver discrimination, notwithstanding the fact that Plaintiff has not even alleged claims for caregiver discrimination under those two statutes.  Notably, however, Defendants do not dispute that caregivers are a protected class under the one statute under which Plaintiff does bring caregiver discrimination claims, the NYCHRL.  Thus, Defendants' claim that caregivers are not protected under Title VII or the NYSHRL is a strawman designed to distract from Plaintiff's meritorious claims.  Because Plaintiff had explained this cause of action in his pre-motion conference letter, and Defendants were fully aware of it, they have waived any argument with regards to NYCHRL caregiver discrimination.  (Dkt. No. 15 at p. 3.)

Defendants' arguments that Plaintiff cannot allege associational discrimination claims under Title VII, the NYSHRL and the NYCHRL similarly lack merit.  Defendants claim that expectant fathers are not protected under Title VII or the NYSHRL.  Again, this argument is entirely misplaced insofar as Plaintiff has not brought claims predicated on his status as an expectant father.  Rather, the SAC alleges that Mr. Ronen was terminated as a result of his association with his wife, who was pregnant and, importantly, suffered from a disability due to the complications associated with her pregnancy.  Defendants attempt to square this circle by arguing that associational discrimination has not been recognized under Title VII and the NYSHRL, suggesting that only the ADA allows for associational discrimination claims.  Their argument simply misrepresents the law.  The Second Circuit has clearly recognized that Title VII also allows for associational discrimination claims based on a third-party's gender, and binding

2

regulations from the New York State Division of Human Rights establish a cause of action for associational discrimination under the NYSHRL.

Finally, Defendants move to dismiss Plaintiff's retaliation claim under all three statutes, arguing that the SAC does not allege that Plaintiff's termination was motivated by a retaliatory animus.  However, their sole support for this position is that the less-than-three months between Plaintiff's complaint in September 2020 and Defendants' first act of retaliation, namely the pretextual negative performance review in December 2020, is insufficient to establish temporal proximity.  However, several cases have found that the temporal proximity alleged in the SAC, in the context of the other actions taken against Mr. Ronen and others, is sufficient to establish a retaliatory animus, particularly at the pleading stage.

Accordingly, Plaintiff's Motion to Dismiss should be denied in its entirety.

## STATEMENT OF FACTS

### I.   REDROUTE RECRUITS AND HIRES MR. RONEN, WHO EXCELS AND RECEIVES PROMOTIONS

Plaintiff Matthew Ronen is a veteran business executive.  After graduating from Cornell University with a Masters of Business Administration, Mr. Ronen joined Colgate-Palmolive as an Associate Brand Manager, where he led a nationwide redesign of the Company's brand and managed a sales operation with over $500 million in income and expenses.  ¶¶[1] 15-16.  Wanting to give back to the community, Mr. Ronen left Colgate-Palmolive and found a national service organization, which was later acquired by a nonpartisan thinktank.  ¶¶ 17-21.  After this initial entrepreneurial and philanthropic success, he founded ServiceCorps, an organization that partnered with large corporations to have them defer job offers to recent college graduates while

---

[1]     All citations to '¶' or "¶¶" refer to paragraphs in the Second Amended Complaint.  See Dkt. No. 12.

the latter worked for a nonprofit or public organization.  ¶¶ 21-24.  By 2019, Mr. Ronen had a

wealth of experience raising capital, hiring personnel, and founding and operating startups,

including all aspects of their finances, operations and marketing.  ¶¶ 25-26.  As a result, when

RedRoute, a call center automation company, was looking for someone to head its core product,

Mr. Ronen's experience made him an ideal candidate.  ¶¶ 27-28.  Therefore, the Company hired

him as its first senior hire and Head of Interactive Voice Response ("IVR") in March 2019, and,

after just six months, promoted him to Head of Business Development.  ¶¶ 29-30.

        As Head of Business Development, Mr. Ronen was second in seniority only to

RedRoute's CEO, Brian Schiff.  ¶ 31.  During 2019 and 2020, Mr. Ronen successfully

spearheaded RedRoute's effort to market itself to investors, securing significant direct

investments and financing.  ¶¶ 32-35.  During the pandemic, Mr. Ronen helped ensure

RedRoute's survival, securing a Paycheck Protection Program loan for $312,500, an Economic

Injury Disaster Loan of $150,000, and, in June 2020, a $400,000 convertible note from an

existing investor.  ¶¶ 36-37.  Amidst these successes, Mr. Ronen and his wife learned that she

was pregnant.  ¶ 45.  However, because Mr. Schiff and RedRoute co-Founder Sam Krut had

questioned him in the past about his plans to have children, Mr. Schiff felt uncomfortable sharing

the news with them and did not immediately do so.  ¶¶ 45-47.

        Acknowledging his outstanding performance, in fall, 2020, Mr. Schiff gave Mr. Ronen a

raise of $20,000 and began transferring additional duties to him in anticipation of his taking over

as Chief Operating Officer ("COO").  ¶¶ 38-40.  Mr. Schiff made it clear that it was his

expectation that Mr. Ronen would one day take over managing the company to allow Mr. Schiff

to focus on the corporation's external relationships.  ¶ 40.  Later, Mr. Schiff formalized this plan

when he and Mr. Ronen agreed that Mr. Ronen would become COO and receive another raise on

January 1, 2021. ¶ 42. Mr. Schiff announced the plan to RedRoute leadership in November 2020 and drafted an internal document naming Mr. Ronen COO. ¶ 43.

## II.    MR. RONEN COMPLAINS ABOUT REDROUTE'S DISCRIMINATORY POLICIES AND UNLAWFUL FIRING OF A PREGNANT EMPLOYEE

Part of Mr. Ronen's hesitancy to inform the Company about his wife's upcoming pregnancy stemmed from witnessing how Defendants dealt with other individuals who they feared would require leave to care for a newborn child. Specifically, during a meeting in the fall of 2020, Mr. Schiff, Mr. Krut and Luke Busher (RedRoute's Head of Products) told Mr. Ronen that a female employee, Laura Pelaez (Product Manager) was pregnant and had been going to doctor's appointments. They sought Mr. Ronen's advice as to what they should do. ¶¶ 49-50. At this meeting, Mr. Busher revealed that Mr. Schiff and Mr. Krut had been pressuring him to fire Ms. Pelaez, in order to prevent her from taking any maternity leave. ¶ 51. Mr. Ronen immediately objected, saying that the Company could not even consider making employment decisions based on an employee's pregnancy and/or need for leave. ¶ 52. At the end of the meeting, Mr. Ronen believed he had at least succeeded in preventing Defendants from taking any immediate action against Ms. Pelaez. ¶¶ 53-54. However, Mr. Ronen soon learned that, despite his objections, Defendants had barreled ahead with their decision to fire Ms. Peleaz in September 2020. Shocked, Mr. Ronen complained directly to Mr. Schiff, telling him that Defendants' conduct was illegal. ¶¶ 55-56. Outrageously, Mr. Schiff brushed off Mr. Ronen's concerns and even responded by bragging that he had terminated another female employee, Kalyani Taru, the day after Ms. Taru had told him that she was pregnant. ¶¶ 57, 59.

After these discussions, Mr. Ronen realized that Defendants simply did not care about their legal obligations (or their employees' legal rights) and were willing to fire any employee who they suspected needed time off to care for a new baby. ¶ 58. Moreover, Defendants' firings

of Ms. Pelaez and Ms. Taru followed a similar pattern.  ¶ 58.  Management first concealed their need for leave from the rest of RedRoute and then summarily fired both employees without warning.  ¶ 58.  Schiff subsequently used phantom performance justifications to purportedly justify the terminations to RedRoute's other employees.  ¶ 58.  Even Mr. Ronen himself had been taken in by Mr. Schiff's claims that Ms. Taru had been fired for legitimate performance reasons and did not learn the truth until Mr. Schiff admitted that he had fired her because of her pregnancy.  ¶ 58.

Later, between September and December 2020, Mr. Schiff outright admitted to Mr. Ronen that he thought RedRoute should not hire women, because he believed they would take more parental leave.  ¶ 60.  He also told Mr. Ronen that he wished to fire a male employee, Sayeed Siddiqui, because Mr. Siddiqui had a wife.  As a result, Mr. Schiff believed that they would have children and Mr. Siddiqui would take parental leave.  *Id.*

## III.   DEFENDANTS TERMINATE MR. RONEN

Subsequently, in November 2020, Mr. Ronen informed Mr. Schiff that his wife was pregnant.  Mr. Schiff responded by outrageously asking Mr. Ronen if he could delay starting a family.  ¶ 62.  Soon thereafter, Mr. Schiff began criticizing Mr. Ronen's performance *for the first time* by issuing him a baseless negative performance review in December 2020.  ¶ 63.  Mr. Schiff then rescinded his previous promise to promote Mr. Ronen to COO, saying that he wanted to delay the promotion until February 2021, ostensibly so that Mr. Ronen could get more "experience," a statement, which made no sense given Mr. Ronen's previous outstanding performance.  ¶¶ 64-65.  When Mr. Ronen told Mr. Schiff that he planned on breaking the news of his wife's pregnancy at the company holiday party (held via Zoom) in December 2020, Mr. Schiff insisted he refrain from doing so.  ¶ 66.  Obviously, as with Ms. Pelaez and Ms. Taru,

Schiff wanted to conceal the fact that Mr. Ronen was about to take time off to care for his newborn child so as to be able to later justify his termination to RedRoute's other employees.

This was precisely what happened.  Soon thereafter, Mr. Schiff asked Mr. Ronen whether he would be taking "formal paternal leave time."  ¶ 67.  Mr. Ronen replied that he would be taking time to care for both his wife and child, as his wife would be giving birth two weeks before her due date, on February 9, 2021, owing to complications with her pregnancy.  ¶ 69.  But Mr. Ronen also offered that he was willing to be "flexible" given his new responsibilities as COO, to minimize disruptions to RedRoute's operations.  ¶ 70.  Mr. Schiff replied that he was "glad to hear that because *this is something I have been concerned about*."  ¶ 71.  (emphasis added).

In January 2021, less than two-weeks after Mr. Ronen informed Mr. Schiff about his need to take leave to care for his wife and less than four months after his protected complaint about RedRoute's discrimination, Mr. Schiff terminated Mr. Ronen, citing phantom, ad pretextual, performance reasons.  But these reasons were impossible to credit in light of Mr. Ronen's actual job performance and RedRoute's total departure from standard protocol for addressing employee performance issues.  ¶¶ 72-73; *see* ¶ 75 (describing how employees would usually be put on a performance improvement plan).  Mr. Schiff expressed he believed it would be "better for" Mr. Ronen this way, implying that Mr. Ronen would now have more time to care for his wife and child.  ¶ 74.

## IV.   <u>THE INSTANT LITIGATION</u>

Mr. Ronen commenced this action against Defendants by filing a Complaint on May 17, 2021.  With the Court's leave, on September 21, 2021, Mr. Ronen filed his Second Amended Complaint ("SAC") altering or removing several causes of action.  The SAC alleges in six causes

of action the following categories of claims: (1) Defendants discriminated against Mr. Ronen based on his caregiver status, in violation of the NYCHRL; (2) Defendants discriminated against Mr. Ronen based on his protected association with a pregnant and disabled woman, in violation of Title VII, the NYSHRL and the NYCHRL; (3) Defendants retaliated against Mr. Ronen for his complaints about RedRoute's discrimination, in violation of Title VII, the NYSHRL and the NYCHRL. Defendants now move to dismiss the causes of action under (2) and (3). As explained below, Defendants have not moved to dismiss Mr. Ronen's caregiver discrimination claim under the NYCHRL.

## ARGUMENT

### I. STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015). To survive a motion to dismiss, the complaint must only "state a claim to relief that is plausible on its face," which requires the plaintiff to plead facts permitting "'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Schwab v. Smalls et al.*, 435 F. App'x 37, 39 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As explained by the Second Circuit:

> The role of the court at this [Rule 12(b)(6)] stage of the proceedings *is not in any way to evaluate the truth as to what really happened*, but merely to determine whether plaintiff's factual allegations are sufficient to allow the case to proceed.

*Doe v. Columbia Univ.*, 831 F.3d 46, 59 (2d Cir. 2016) (emphasis added).

## II.   THE SAC STATES A CLAIM FOR CAREGIVER STATUS DISCRIMNATION UNDER THE NYCHRL

Defendants' sole argument in support of their position that Plaintiff's discrimination claims under the NYCHRL should be dismissed is that, because the NYCHRL does not make familial status discrimination unlawful, the SAC has failed to allege a viable cause of action. They argue that "[f]amilial status is not a protected class." Mot. to Dismiss at 9. However, as the SAC makes clear, Plaintiff is not alleging that he was discriminated against based on his familial status. Rather, he alleges that he was discriminated against on the basis of his need to provide care to his wife (who was in the midst of a high-risk pregnancy) and his new child. Here, Defendants do not even attempt to address this aspect of Plaintiff's claims. Simply put, the NYCHRL protects caregivers like Mr. Ronen from discrimination, and Defendants' failure to address this claim underscores that there is no basis for its dismissal.[2]

Beginning with the statute's plain text, the NYCHRL bars discrimination on the basis of an employee's "actual or perceived . . . caregiver status." N.Y. Code § 8-107(1)(a). The New York City Administrative Code defines a caregiver as "a person who provides direct and ongoing care for a minor child or a care recipient," including the caregiver's spouse. N.Y.C. Code § 8-102; *see, e.g., Palmer v. Cook*, 108 N.Y.S.3d 297, 308 (N.Y. Sup. Ct. 2019) (finding discrimination based on an employee's need to care for husband undergoing chemotherapy); *Pustilnik v. Battery Park City Auth.*, 147 N.Y.S.3d 357, 372 (N.Y. Sup. Ct. 2021) (plaintiff stated

---

[2]   Defendants had full notice of this provision of the NYCHRL through Plaintiff's pre-motion briefing. (*See* Dkt. No. 15 at p. 3). Thus, they have had ample opportunity to address this claim in moving to dismiss. That they have failed to do so is a bar against their moving to dismiss this cause of action. Relatedly, the Court should consider waived any of Defendants' arguments raised for the first time on reply. *Curto v. Med. World Commc'ns, Inc.*, 388 F. Supp. 2d 101, 109 fn. 2 (E.D.N.Y. 2005). This is especially so given that Plaintiff thoroughly briefed this issue in his pre-motion letter and Defendants had every chance to raise it.

claim for caregiver discrimination, based on her need to schedule medical appointments for her sick mother).  As with all of the categories of individuals protected from discrimination under the NYCHRL, the caregiver provisions must "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof."  N.Y.C. Code § 8-130.  *See, e.g., Morse v. Fidessa Corp.*, 84 N.Y.S.3d 50, 51-52 (1st Dep't 2018) (rejecting a narrow reading of the NYCHRL's "marital status" discrimination clause and holding that employee-plaintiff could state a claim based on the employer's wish that the employee divorce his spouse).

Both the City Council and the City Commissioner on Human Rights have rejected any claim that the NYCHRL does not protect expectant parents who need to help care for a child. According to the New York City Council, the NYCHRL protects not only those presently and literally engaged in caregiving, but against any employment action "based on the employer's presumption that caregivers c[an] not handle increased work load."  N.Y. Local Law Report No. 1 Int. 108-A (2016) (City Council report on the legislation).[3]  In its contemporaneous interpretation of the 2016 law, the City Commission on Human Rights likewise described caregiver status discrimination as "the belief that someone with children or caring for a relative with a disability will not be a reliable employee."[4] CARMELYN P. MALALIS, CITY COMMISSIONER OF HUMAN RIGHTS, "Protections for Workers with Caregiving Responsibilities",

https://www1.nyc.gov/assets/cchr/downloads/pdf/materials/Caregiver_FactSheet-Employer.pdf (April 26, 2016).

---

[3]     The Local Law Report also makes clear that the City Council was concerned with employers' refusal to give "even nominal accommodations for caregivers to meet both their work and familial responsibilities."  The report can be reached at the following link: https://www.westlaw.com/Document/I0E003E3EE82048038CE4E09E5ED41FF8/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0

In light of this clear and unambiguous statutory language, it is obvious why Defendants have not chosen to address Plaintiff's caregiver discrimination claims under the NYCHRL. Defendants fired Mr. Ronen based on the discriminatory presumption that he would not work effectively once he needed time to care for his wife and newborn child. Soon after he disclosed his wife's pregnancy and his need to take leave to care for both his child and his wife, who had complications with her pregnancy and would be undergoing an early birth, RedRoute gave him a negative performance review and denied him a promised promotion, signaling its belief that Mr. Ronen, as a caregiver, could not handle an increased workload. Even though Mr. Ronen had proven himself as an employee time and again, Defendants nonetheless admitted that they were "concerned about" Mr. Ronen needing time off to care for his wife and unborn child. Soon thereafter, Mr. Schiff summarily terminated Mr. Ronen. Tellingly, when he did so, Schiff told Mr. Ronen that it would be "better for" him to not have to work, revealing his irrational belief that caregivers must devote themselves to caregiving full-time. That is the exact discrimination against which the NYCHRL protects. To the extent Defendants suggest that "Ronen has failed to plausibly allege he was in fact a 'caregiver'",[5] Mot. to Dismiss at 9, this claim is fatally undermined by the unambiguous allegations in the SAC, which describe how Mr. Ronen informed Mr. Schiff and RedRoute that he would need to care for his newborn and wife. ¶ 69 ("He informed Mr. Schiff that the surgery would cause her to require care during a convalescent period, and *that he anticipated having to care for her and his newborn while she recovered*. This was especially important to Mr. Ronen, given that the early delivery carried risks of complications for both his wife and his child.") (emphasis added).

---

[5]     Defendants make this argument with regards to NYSHRL caregiver discrimination (though the NYSHRL does not protect against this kind of discrimination and Plaintiff has not even stated a claim for caregiver discrimination under the NYSHRL).

Plaintiff's allegation of caregiver discrimination is further underscored by Defendants' consistent discrimination against caregivers and/or potential caregivers in the past. The SAC alleges that Defendants terminated two other employees because of a fear that those employees would take time off to care for their families. Mr. Ronen also learned during his employment that Mr. Schiff wished to forego hiring women because they were likely to become pregnant and need to take leave to care for their children, and that Mr. Schiff wished to fire another, male employee, in anticipation of his wife becoming pregnant. ¶ 60. In short, the SAC alleges that Defendants had an unapologetic practice of discriminating against caregivers.

Defendants will no doubt argue on reply that Mr. Ronen was only a "future caregiver," and therefore not protected by the NYCHRL. That interpretation of "caregiver" should be rejected, as it would run counter to N.Y.C. Code § 8-130's liberal-construction rule. Put another way, it would neuter the NYCHRL to permit employers to fire an employee in anticipation of their becoming a caregiver. Indeed, it would even create a perverse incentive to terminate caregivers-to-be as early as possible. But anti-discrimination laws based on a protected status (pregnancy, caregiver, marital, familial, military, etc.) must logically include future status as well, or they would become impossibly weak. For instance, no one would argue that employers may freely fire those who intend to become pregnant in the future, just because they are not yet pregnant. *See, e.g., Walsh v. Nat'l Computer Sys., Inc.*, 332 F.3d 1150, 1160 (8th Cir. 2003) ("Walsh asserts that she was discriminated against not because she was a new parent, but because she is a woman who had been pregnant, had taken a maternity leave, and might become pregnant again . . . Because Walsh presented evidence that it was her potential to become pregnant in the future that served as a catalyst for Mickelson's discriminatory behavior, we will not disturb the jury verdict.") Any such argument should be rejected in the instant case.

12

## III.    THE SAC STATES CLAIMS FOR ASSOCIATIONAL DISCRIMINATION

Defendants also move to dismiss Plaintiff's claims for associational discrimination, arguing that associational discrimination is not available under Title VII.[6]  Defendants' argument ignores both the statutory text and, importantly, recent Second Circuit precedent.  Title VII and the NYSHRL both protect against associational discrimination, including discrimination based on an employee's association with a pregnancy.  The NYSHRL and NYCHRL also cover Mr. Ronen's association with his wife's disability, as she suffered complications with her pregnancy, which is considered a disability under those statutes.  Accordingly, the SAC states claims that Defendants discriminated against Mr. Ronen as a result of his association with his wife's pregnancy and/or with her disability and Defendants' motion to dismiss these claims should be denied.

### A.    Associational Discrimination Under Title VII

Title VII includes in its bar against sex discrimination any employment action taken "because of or on the basis of pregnancy, childbirth, or related medical conditions."  42 U.S.C. § 2000e(k); *see Barrett v. Forest Lab'ys, Inc*., 39 F. Supp. 3d 407, 447 (S.D.N.Y. 2014) ("Title VII makes clear that "discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex.")  Moreover, the Second Circuit has explained that Title VII protects employees based on their ***association*** with a protected class, "including sex."  *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 125 (2d Cir. 2018); *see Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 994 (6th Cir. 1999) (collecting cases, observing that "courts . . . have broadly construed Title VII to protect individuals who are the

---

[6]    Again, Defendants' failure to address Plaintiff's associational discrimination claims under the NYSHRL and the NYCHRL estops them from contesting those claims on reply.  *See infra*, Section III.C.

victims of discriminatory animus towards third persons with whom the individuals associate").[7]
Title VII therefore protects Mr. Ronen's association with his pregnant wife. Simply put, if
pregnancy discrimination is sex discrimination, then to discriminate on the basis of an
employee's association with a pregnant woman is to discriminate on the basis of the employee's
association with a woman. The holding of *Zarda* plainly forbids any such behavior.

While *Zarda* explicitly embraced this interpretation of Title VII, it is also implicit in prior
holdings of the Supreme Court. In *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*,
462 U.S. 669 (1983) (Stevens, J., with six Justices joining in the opinion), the Supreme Court
held that it was impermissible pregnancy discrimination to provide pregnancy health benefits to
female employees but deny them to the spouses of male employees who were covered by the
policy. In doing so, the Court explained that "[t]here is no merit to [the] argument that the
prohibitions of Title VII do not extend to discrimination against pregnant spouses because the
statute applies only to discrimination in employment." *Id*. at 684. In other words, the employer
in *Newport News* could not disadvantage a male employee where such conduct was premised on
disparate treatment directed at that employee's pregnant spouse. The same reasoning applies
here.

In the instant case, Defendants chose to discriminate against Mr. Ronen because his wife
was pregnant, and Title VII provides a remedy for such unlawful behavior. *See infra,* Section
III.B. In short, because Title VII bars discrimination "because of or on the basis of pregnancy,"
it bars RedRoute's actions here. Contrary to what Defendants' claim, this is simply not a case
about Mr. Ronen's status as an expectant father. It is about RedRoute's pregnancy

---

[7]     RedRoute's bare assertion that Title VII does not protect against associational
discrimination is unavailing, as it simply ignores *Zarda*'s holding that associational
discrimination is actionable under Title VII.

discrimination, as that discrimination impacted Mr. Ronen through his association with his wife. The cases to which Defendants cite, holding that paternity is not protected *per se* are simply inapposite as these cases did not address the independent claim of associational discrimination, nor were such claims asserted therein. *See Van Soeren v. Disney Streaming Serv.*, No. 19 Civ. 10196 (NRB), 2020 WL 6131255, at *3 (S.D.N.Y. Oct. 16, 2020) ("familial status — such as being a new parent — is not a protected class under Title VII."); *Adler v. S. Orangetown Cent. Sch. Dist.*, No. 05 Civ. 4835 (SCR), 2008 WL 190585, at *10 (S.D.N.Y. Jan. 17, 2008) ("While these statements suggest discriminatory intent, this discrimination would be based on Ms. Adler's pregnancy-not on the gender of Mr. Adler or the gender of Ms. Adler.").[8]  It is not Mr. Ronen's contention that he, as an expectant father, deserves a certain class of benefit available only to RedRoute's female employees, such as a particular leave, pay or insurance benefit.  Rather, he contends that Title VII protects him against RedRoute's policy of discriminating against pregnant women by terminating all employees who are pregnant or who associate with pregnant women.

RedRoute also argues that Plaintiff's claim would read the woman-specific protection against pregnancy discrimination out of Title VII.  That is not true, and RedRoute's reading is, in fact, the less plausible one.  The text of Title VII reads as follows:

> ["Clause 1":] The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; ["Clause 2":] and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes.

42 U.S.C. § 2000e(k)

---

[8]    To the extent the Court in *Adler* meant to suggest that discrimination on the basis of pregnancy is not gender discrimination, it misconstrued Title VII as amended by the Pregnancy Discrimination Act of 1978.

Based on this text, RedRoute argues that "applying associational discrimination in the context of an expectant father's claim would write out of the statute the language added by the Pregnancy Discrimination Act focusing on pregnancy, childbirth, or related medical conditions affecting women."  Mot. to Dismiss at 6-7.  However, only Clause 2 mentions "women." Its plain text says only that pregnant women have a special protection, in that they must be treated equally to other employees with the same capacity to work.  *See Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 135 S. Ct. 1338, 1342 (2015) (Breyer, J. with four Justices joining the opinion) ("UPS claims that the Act's second clause simply defines sex discrimination to include pregnancy discrimination. But that cannot be right, as the first clause of the Act accomplishes that objective. Reading the Act's second clause as UPS proposes would thus render the first clause superfluous.")  Nothing about Clause 2 indicates that it controls over Clause 1, which describes a more general ban on pregnancy discrimination, including for instance, the discrimination the Supreme Court struck down in *Newport News*.  *See Newport News,* 462 U.S. at 679 ("As petitioner argues, congressional discussion focused on the needs of female members of the work force rather than spouses of male employees.  This does not create a "negative inference" limiting the scope of the act to the specific problem that motivated its enactment.")  Indeed, it is RedRoute's reading that would create surplusage, by rendering Clause 1 a duplicate of Clause 2.  The gravamen of Plaintiff's claims is that RedRoute affirmatively discriminated against him because of pregnancy, under Clause 1.

The distinction between Clauses 1 and 2 of subsection (k) also helpfully illustrates how Mr. Ronen's claim stems not from paternity or familial status.  It stems, rather, from RedRoute's affirmative discrimination against pregnant women and those who associate with pregnant women, as outlawed under Clause 1.  Put another way, Clause 1 of subsection (k) would not

require that Mr. Ronen be treated equally to a man without a pregnant wife.  RedRoute could, for instance, provide leave benefits for disabilities that they would not provide to expectant fathers. By contrast, under Clause 2, they would have to insure pregnancy and provide pregnancy leave to women to the same extent they would insure or provide leave for any similar disability.[9]

### B.  Associational Discrimination Based on Mr. Ronen's Wife's Pregnancy Under the NYSHRL

Regulations by the State's Division of Human Rights[10] make clear that the NYSHRL also protects against associational discrimination.  *See* N.Y. Comp. Codes R. & Regs. tit. 9, § 466.14 ("'unlawful discriminatory practice' . . . shall be construed to prohibit discrimination . . . because of [an] individual's . . . association with a member . . . of a protected category.").  Importantly, the NYSHRL's protections do not depend upon the plaintiff's membership in a protected class. *See, e.g., Canales v. ACP Facility Servs., Inc.*, No. 17  Civ. 6937 (DRH) (AYS), 2019 WL 1171479, at *4 (E.D.N.Y. Mar. 13, 2019) (holding that plaintiff stated a cause of action based on her association with her daughter, who had previously filed a complaint of discrimination); *Chiara v. Town of New Castle*, 126 A.D.3d 111, 122, 2 N.Y.S.3d 132, 141 (2d Dep't 2015) ("Accordingly, the plaintiff sufficiently demonstrated his membership in a protected class by virtue of the defendants' alleged discriminatory conduct stemming from his marriage to a Jewish person."); *see also* N.Y. Exec. Law § 300 ("The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof.")  Moreover, under the

---

[9]      As a further distinction, Title VII would protect against associational pregnancy discrimination even for those who were not expecting to become fathers (or parents), for instance an individual who was helping a family-member or friend through a pregnancy.

[10]      As the law makes clear, these regulations are binding on any interpretation of the NYSHRL: "Statutory Authority. Pursuant to N.Y. Executive Law § 295.5, it is a power and a duty of the Division to adopt, promulgate, amend and rescind suitable rules and regulations to carry out the provisions of the N.Y. Executive Law, article 15 (Human Rights Law)." N.Y. Comp. Codes R. & Regs. tit. 9, § 466.14.

NYSHRL, pregnancy itself is a protected characteristic. *See Elaine W. v. Joint Diseases N. Gen. Hosp., Inc.*, 81 N.Y.2d 211, 216 (1993) ("[W]e have consistently held that distinctions based solely upon a woman's pregnant condition constitute sexual discrimination.") Accordingly, the NYSHRL protects Mr. Ronen's association with his pregnant wife and shields him from adverse actions based on irrational beliefs that employees married to pregnant people cannot adequately perform their jobs.

RedRoute and Mr. Schiff punished Mr. Ronen out of that exact belief. Under the plain text of N.Y. Comp. Codes R. & Regs. tit. 9, § 466.14, this is actionable discrimination, totally separate from any interpretation given to Title VII, and without any reference to Mr. Ronen's membership or lack of membership in any protected class. Compare Plaintiff's claims in this case, for instance, to that of the mother in *Canales*, who did not claim membership in any class, but only a protected association with a family member who had filed a complaint of discrimination. Because the NYSHRL provides a cause of action for associational discrimination, Mr. Ronen need not allege (and has not alleged) "familial status" discrimination, and Defendants' arguments on this basis do not warrant dismissal.

The allegations in the SAC make plain that RedRoute discriminated against Mr. Ronen under both Title VII and the NYSHRL based on his association with his pregnant wife. In spite of years of high performance, shortly after he told Defendants that his wife was pregnant, Mr. Schiff responded, absurdly and brutally, by asking whether Mr. Ronen could delay starting a family. Defendants then put in motion a scheme to terminate him, beginning with fabricating negative performance reviews and rescinding a promotion. They did so out because they believed caring for a newborn child was incompatible with being an effective and valuable employee. That is amply demonstrated by RedRoute's pattern and practice of discriminating

18

against pregnant women directly, like Ms. Pelaez and Ms. Taru.  More tellingly, it is reflected in their open animus against men whose wives could become pregnant, like Mr. Siddiqui (and, of course, Mr. Ronen himself).  Thus, as they had done with Ms. Pelaez and Ms. Taru, RedRoute's leadership drummed up false and pretextual performance-based reasons to terminate Mr. Ronen. Because the NYSHRL bars all discrimination on the basis of association with a protected class, regardless of one's own class membership, it bars the discrimination here.

Defendants further argue that the NYSHRL cannot protect men with pregnant spouses, because it does not explicitly enumerate "men with pregnant spouses" as a protected class. However, the NYSHRL *does* explicitly encompass associational discrimination by its terms. Just as the statute does not explicitly enumerate "parent of a child who makes a claim of disability discrimination," *see Canales*, 2019 WL 1171479, at *4, or "a husband of a Jewish spouse," *see Chiara*, 126 A.D.3d at 122, the fact that a particular class is not listed does not mean that members of that class are not protected from discrimination because of their relationships with people who are specifically protected.  The very concept of associational discrimination is to prohibit discrimination not because someone is a member of a protected class specifically listed in the statutory text, but because of their *relationship* with such individuals.

Indeed, if Defendants are correct that only individuals explicitly identified in the statutory text are protected from discrimination, then pregnant women would not be protected under the NYSHRL in the first instance.  On its face, the NYSHRL does not protect pregnant women; that protection comes from the judicial interpretation of "sex discrimination" in *Elaine W.,* 81 N.Y.2d at 216.  Were Defendants proposed reading of statutes accurate, the equal protection clause of the Fourteenth Amendment would not ban segregation, because the right to be free of segregation is not specifically mentioned.  Defendants' argument is really an argument against

19

judicial interpretation and should be rejected out of hand, especially in light of the NYSHRL's requirement that its provisions be given a broad, liberal construction.  In any case, this is a moot point, as the New York State Division of Human Rights has announced that the NYSHRL covers associational discrimination regardless of a plaintiff's membership in a protected class. Defendants' arguments are, in short, without merit and do not warrant dismissal.

**C.    Associational Discrimination Based on Mr. Ronen's Wife's Disability Under the NYSHRL and NYCHRL**

Under both the NYSHRL and the NYCHRL, the SAC also states a claim for Defendants' discrimination against Mr. Ronen based on his association with his disabled wife.  As alleged in the SAC, Mr. Ronen told Defendants he would need to care for his wife after she underwent a surgery stemming from pregnancy complications, and Defendants terminated him shortly thereafter.

As already discussed above, the NYSHRL covers associational discrimination.  The NYCHRL does as well.  New York City, N.Y., Code § 8-107(20) ("The provisions of this section set forth as unlawful discriminatory practices shall be construed to prohibit such discrimination against a person because of the actual or perceived . . . disability . . . of a person with whom such person has a known relationship or association.")

Moreover, under the broad definition of disability of both the NYSHRL and NYCHRL, it is clear that the SAC alleges that Mr. Ronen's wife did have a qualifying disability based on her pregnancy complications.  Under the NYSHRL, disability "means (a) a physical . . . or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques."  N.Y. Exec. Law § 292(21).  The NYCHRL defines

disability as "any physical, medical, mental or psychological impairment."  N.Y.C. Code § 8-102.

Unlike the ADA, "[n]either of these definitions requires a [Plaintiff] to show that his disability 'substantially limits a major life activity.'" *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001)) (quoting *Hazeldine v. Beverage Media, Ltd.*, 954 F.Supp. 697, 706 (S.D.N.Y. 1997)).  Courts have held both the NYSHRL's and the NYCHRL's definitions of "disability" to be satisfied by pregnancy-related complications.  *See, e.g., Jackson v. Battaglia*, 63 F. Supp. 3d 214, 225 (N.D.N.Y. 2014) (NYSHRL's definition of disability satisfied by allegation of "pregnancy-related complications"); *Figueroa v. City of New York*, No. 05 Civ. 9594 (JGK), 2011 WL 309061, at *1 (S.D.N.Y. Feb. 1, 2011) (summarizing prior hearing on a motion to dismiss, stating that a "high-risk pregnancy" counts as a disability under the NYCHRL).

Here, Defendants terminated Mr. Ronen soon after he told them he would need to care for his wife due to complications with her pregnancy that would require her to give birth early and go through a period of convalescence.  Pregnancy complications include a range of potentially dangerous conditions requiring medical attention and, in this case, medical intervention and a convalescent period.  *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, "Pregnancy Complications",

https://www.cdc.gov/reproductivehealth/maternalinfanthealth/pregnancy-complications.html

(last accessed November 30, 2021).  Because both the NYSHRL and NYCHRL would recognize these complications as a disability, RedRoute was barred from firing Mr. Ronen for his association with his disabled wife.

21

## IV.   THE SAC STATES A CAUSE OF ACTION FOR RETALIATION

"[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. Defendants challenge only the second prong of this test by arguing that Mr. Ronen's complaints about RedRoute's illegal firings of Ms. Pelaez and Ms. Taru was not causally related to their subsequent adverse employment actions.

At the pleading stage, the SAC need only allege facts sufficient to demonstrate that it is plausible that his termination was motivated by his complaints on behalf of other employees. However, the issue of causation is rarely even appropriate for summary judgment as such a fact-specific inquiry is "a quintessential jury function." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 392 (2d Cir. 2020) (five months between complaint of discrimination and adverse action sufficient to give rise to inference of retaliation at summary judgment stage).[11]  On the pleadings, a plaintiff may indirectly establish a causal connection to support a retaliation claim "by showing that the protected activity was closely followed in time by the adverse employment

---

[11]     It is important to distinguish judicial statements such as that in *Forrester v. Corizon Health, Inc.*, 752 F. App'x 64, 66 (2d Cir. 2018), where the court reasoned that "evidence of temporal proximity alone is not enough to demonstrate retaliation under the NYCHRL."  Such statements address Plaintiff's burden at summary judgment.  Both of Defendants' cases that follow *Forrester* (and *Forrester* itself) involved summary judgment, *after* the plaintiffs had been permitted to develop a full record during discovery.  *See Guzman v. Crothall Healthcare Inc.*, No. 17 Civ. 4306 (CBA) (PK), 2021 WL 5048993, at *11–12 (E.D.N.Y. Sept. 29, 2021) (at summary judgment, temporal proximity alone was insufficient, because Defendants had adduced strong evidence of a legitimate, non-retaliatory reason for the adverse action); *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 77 (2d Cir. 2015) (same, because Plaintiff's supervisor had been commenting negatively on plaintiff's performance since well before her complaint of discrimination). These cases are inapplicable to Plaintiff's burden at the pleading stage.

action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2nd Cir. 2010) (internal quotations and citation omitted).

Here, Defendants argue that the three months that elapsed between Plaintiff's complaints and the termination of his employment is too attenuated to support a finding of retaliatory animus. Defendants' argument misstates both the law and Plaintiff's allegations in this case. As a threshold matter, while Defendants argue for a bright-line temporal proximity cutoff of three months, there is no such rule, and four months suffices to state causation at the pleading stage. *Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 443 (S.D.N.Y. 2019) ("Here, at the very least there is a causal connection because of temporal proximity, a four-month gap, between the November 2015 NAACP complaint and the March 2016 charges and suspension being brought against Plaintiff.")[12]

Second, while the inference from temporal proximity suffices to state a claim, it must also be borne in mind that the inquiry is fact sensitive and case specific and that other factors can support even longer gaps in temporal proximity. For instance, employers may be forced by circumstances to delay a retaliation in order to create a satisfactory pretext. *See Cronin v. St. Lawrence,* No. 08 Civ. 6346 (KMK), 2009 WL 2391861, at *5 (S.D.N.Y. Aug. 5, 2009) (collecting cases with temporal gaps of eight to eleven months, where employers had no earlier

---

[12]     Again, all of Defendants' cases in support of a bright-line "three month" rule involved summary judgment with a fact record cutting against any inference to be drawn from temporal proximity. They offer no guidance for a motion to dismiss.  *See Garrett v. Garden City Hotel, Inc.*, No. 05 Civ. 0962 (JFB) (AKT), 2007 WL 1174891, at *15 (E.D.N.Y. Apr. 19, 2007) ("[T]he Court finds that the alleged discriminatory remark by Samman, *when considered in the context of all the evidence*, is too 'remote and oblique'") (emphasis added); *see also Smiley v. Cassano*, No. 10 Civ. 3866 (RJS), 2012 WL 967436, at *9 (S.D.N.Y. Mar. 21, 2012) (summary judgment, almost a year); *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (summary judgment, 20 months); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) (summary judgment, two-and-a-half years).

opportunity to retaliate).  Likewise, employers may cover their tracks by taking adverse actions

in the normal course of a plaintiff's employment, by, *inter alia*, (and as in this case) waiting until

regularly scheduled reviews.  *See, e.g., Felton v. Monroe Cmty. Coll.*, 528 F. Supp. 3d 122, 139

(W.D.N.Y. 2021) (four-month gap stated causation, because adverse action involved a regularly

scheduled, yearly assignment of classes).  And, "[a] court may overlook a longer gap in time

between protected conduct and an adverse employment action where the pattern of retaliatory

conduct begins soon after [the protected activity] and only culminates later in [adverse action]."

*Laudadio v. Johanns*, 677 F. Supp. 2d 590, 614 (E.D.N.Y. 2010) (quoting *Billue v. Praxair, Inc.*,

No. 3:05 Civ. 00170 (JCH), 2007 WL 1231841, at *8 (D.Conn. Apr. 26, 2007)).

 The allegations in the SAC fall squarely into this framework, owing to the relatively short

period of time between Mr. Ronen's complaint and the adverse action, coupled with evidence

that Mr. Schiff deliberately delayed taking adverse actions in order to cover his tracks.  Here,

first, Mr. Ronen complained about gender discrimination in late September 2020, after RedRoute

fired an employee for her pregnancy.  RedRoute fired Mr. Ronen in January 2021 – a gap of 3-4

months.  Even if this were the only evidence of retaliatory animus available in this case, which,

importantly, it is not, this would be well within the normal range for alleging causation through

temporal proximity.  But there is also strong evidence that Mr. Schiff waited this long because he

wanted to cover his tracks, as with the employer in *Felton*.  Mr. Schiff waited until he could

create a paper trail by giving Mr. Ronen a poor performance review in early December 2020, ***less***

than three months following Mr. Ronen's complaints.  Thus, as in *Laudadio* and accordant cases,

the pattern of retaliation really began well within three months of Mr. Ronen's complaint.  Mr.

Schiff then used the review as an excuse to rescind his previous promise to promote Plaintiff.

Having established a false narrative of failure, Mr. Schiff could then terminate Mr. Ronen safely,

and tell other employees that Mr. Ronen had been fired for performance issues.  Mr. Schiff's process was deliberate, in line with the way he had fabricated performance reasons to fire Ms. Pelaez and Ms. Taru.  These allegations clearly give rise to an inference of retaliation, and discovery is warranted to allow Plaintiff the opportunity to adduce further evidence (including, *inter alia*, internal e-mails and discussions between members of the Company's management after Mr. Ronen's complaints of discrimination).

These facts must also be sifted separately under the NYSHRL and NYCHRL's liberal-construction standards, under which Mr. Ronen must ultimately prove only that a retaliatory motive played some part in Defendants' decision to terminate him.  Given that his claim falls squarely in the framework for a delayed, deliberate retaliation under Title VII, Mr. Ronen's allegations easily satisfy the lower standard of the NYSHRL and NYCHRL as well.  For that reason, the Court should allow these claims to proceed to discovery regardless of its holding regarding Title VII retaliation.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss in its entirety.

Dated:  December 13, 2021

WIGDOR LLP

By: _____
      Michael J. Willemin
      Renan F. Varghese
      John S. Crain

      85 Fifth Avenue
      New York, New York 10003
      Telephone: (212) 257-6800
      Facsimile: (212) 257-6845
      mwillemin@wigdorlaw.com
      rvarghese@wigdorlaw.com
      jcrain@wigdorlaw.com

      *Attorneys for Plaintiff*