UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

**MATTHEW RONEN**,

                              *Plaintiff*,

  - vs.-                                              Civil Action No.
                                                            1:21-cv-02732 (RPK)

**REDROUTE, INC. and BRIAN SCHIFF,**
**in his individual and professional capacities,**

                              *Defendants*.

_____

### DEFENDANTS' SUPPLEMENTAL MEMORANDUM
### REGARDING NEW YORK COMPILATION OF CODES,
### RULES & REGULATIONS, Tit. 9, § 466.14(c)(1)

                                                   **BARCLAY DAMON LLP**
                                                   **Brian E. Whiteley**
                                                   *Attorneys for Defendant*s
                                                   160 Federal Street, Suite 1010
                                                   Boston, Massachusetts 02110
                                                   Telephone:  (617) 274-2900
                                                   Facsimile:   (617) 722-6003
                                                   Email: bwhiteley@barclaydamon.com

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................................... ii

**INTRODUCTION**......................................................................................................................... 1

**THE APPLICABLE LEGAL STANDARD** ............................................................................... 2

**THE REGULATION IMPERMISSIBLY EXTENDS BEYOND THE SCOPE OF THE EXPRESS LEGISLATIVE DELEGATION OF AUTHORITY**................................................ 3

**AN ANALYSIS OF THE FOUR FACTORS IDENTIFIED IN THE *BOREAILI* DECISION CONFIRMS THE DIVISION EXCEEDED ITS AUTHORITY** ............................................ 5

**CONCLUSION** .............................................................................................................................. 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boreali v. Axelrod*,
    71 NY2d 1, 517 NE2d 1350, 523 NYS2d 464 (1987)..................................................2, 3, 5, 6

*Bourquin v. Cuomo*,
    85 NY2d 781, 652 NE2d 171, 628 NYS2d 618 (1995)...........................................................2

*Matter of City of New York v. State of New York Commn. on Cable Tel.*,
    47 NY2d 89, 390 NE2d 293, 416 NYS2d 786 (1979).........................................................2, 4

*Levin v. Whalen*,
    39 NY2d 510, 349 NE2d 820, 384 NYS2d 721 (1976)...........................................................2

*Matter of Mercy Hosp. of Watertown v. New York State Dept. of Social Servs.*,
    79 NY2d 197, 590 NE2d 213, 581 NYS2d 628 (1992)...........................................................2

**Statutes**

NY CLS Exec §295(5)......................................................................................................... *passim*

**Other Authorities**

NY Const., art III, §1 ..................................................................................................................2

New York Compilation of Codes, Rules & Regulations tit. 9, §466.14(c)(1)(2016)............ *passim*

## INTRODUCTION

Defendants RedRoute Inc. and Brian Schiff (collectively "RedRoute") submit this memorandum in response to the Court's request for supplemental briefing regarding: (i) the application, to the claims asserted by Plaintiff Matthew Ronen ("Ronen"), of New York Compilation of Codes, Rules & Regulations tit. 9, §466.14(c)(1)(2016) ("Regulation 466.14(c)"); and (ii) whether Regulation 466.14(c)(1) exceeds the authority granted to New York State's Division of Human Rights (the "Division" or "DHR") under Article 15, §295(a) of the New York State Human Rights Law ("Section 295"). NY CLS Exec §295(5).

Regulation 466.14(c)(1) provides as follows:

> Where the term "unlawful discriminatory practice" is used in the Human Rights Law, it shall be construed to prohibit discrimination against an individual because of that individual's known relationship or association with a member or members of a protected category covered under the relevant provisions of the Human Rights Law.

With respect to the Court's first question, the regulation does not apply here because Ronen's claims are premised on *his* status as an expectant father, and not on the fact of his *association* with his pregnant wife. *See Memorandum of Law In Support of Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure,* Dkt. #17.1 at pp. 7-8 ("Defs. Opening Mem.")

That said, and irrespective of whether Regulation 466.14(c)(1) could be read to apply facially to Ronen's claims, the regulation should not be applied because it exceeds DHR's regulatory authority. Although there does not appear to be any case law analyzing directly whether Regulation 466.14(c)(1) exceeds the Division's authority, the express language of Section 295 of the Human Rights Law reveals the Legislature did not authorize DHR to define "unlawful discriminatory practice," as the Division seeks to do in the regulation. In addition, case law

1

regarding analogous issues confirms the Division exceeded its authority and, in adopting Regulation 466.14(c)(1), usurped the policy-making role reserved to the Legislature.

## THE APPLICABLE LEGAL STANDARD

There is no question that a legislature may delegate to an agency the authority to "fill in the details" with respect to a general statutory provision. *Boreali v. Axelrod,* 71 NY2d 1, 517 NE2d 1350, 523 NYS2d 464 (1987). An agency's authority to do so, however, is limited to those items conferred expressly on the agency and those "required by necessary implication." *Matter of City of New York v State of New York Commn. on Cable Tel.,* 47 NY2d 89, 92, 390 NE2d 293, 416 NYS2d 786 (1979); *Matter of Mercy Hosp. of Watertown v New York State Dept. of Social Servs.,* 79 NY2d 197, 203, 590 NE2d 213, 581 NYS2d 628 (1992).

The authority to "fill in the details," as referenced in *Boreali*, is not without guardrails. "Because of the constitutional provision that '[the] legislative power of this State shall be vested in the Senate and the Assembly' (NY Const., art III, §1), the Legislature cannot pass on its law-making functions to other bodies…." *Levin v Whalen,* 39 NY2d 510, 515, 349 NE2d 820, 822, 384 NYS2d 721, 723 (1976). Further, "[h]owever facially board, a legislative grant of authority must be construed, whenever possible, so that it is no broader than that which the separation of powers doctrine permits." *Boreali¸* 71 N.Y. 2d at 9, 517 N.E.2d at 1353, 523 N.Y.S. 2d at 468. "The constitutional principle of separation of powers… requires that the [l]egislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies" *Bourquin v Cuomo,* 85 NY2d 781, 784, 652 NE2d 171, 173, 628 NYS2d 618, 620 (1995).

## THE REGULATION IMPERMISSIBLY EXTENDS BEYOND THE SCOPE OF THE EXPRESS LEGISLATIVE DELEGATION OF AUTHORITY

The governing and authorizing statute at issue, Section 295(5) of the Human Rights Law, grants limited authority to the Division with respect to the adoption of rules and regulations. In particular, the statue authorizes the Division: "[t]o adopt, promulgate, amend and rescind suitable rules and regulations to carry out the provisions of this article, and the policies and practices of the division in connection therewith." NY CLS Exec §295(5).

The plain language of the statute resolves the issue without the need for the more detailed analysis set forth in the *Boreali* and *Greater N.Y. Taxi Assn.* cases. This is because the Division's authority is expressly limited to "rules and regulations *to carry out* the provisions of this article…."[1] (emphasis added). The language provides no leeway for DHR to define the particular legislative provisions, and certainly no authority, as the Division has done here, to expand the scope of the statute.

The fact the DHR exceeded its narrow mandate is readily apparent from a side-by-side analysis of the authorizing statute and the regulation:

**Section 295(5) of the Human Rights Law**        **Regulation § 466.14(c)(1)**

| To adopt, promulgate, amend and rescind suitable rules and regulations to carry out the provisions of this article…. | Where the term "unlawful discriminatory practice" is used in the Human Rights Law, it shall be construed to prohibit discrimination against an individual because of that individual's know relationship or association with a member or members of a protected category covered under the relevant provisions of the Human Rights Law. |
|---|---|

---

[1] The second clause of the authorization section involving the "policies and practices of the division" clearly focuses only on the policies and practices of the DHR itself, and not the statute.

3

In sum, the statute does nothing more than authorize the adoption of rules and regulations to "carry out the provisions of" Article 15 of the Human Rights Law. Rather than tailor Regulation 466.14(c)(1) to simply "carry out" the directives of the statute, the Division adopted a broad and expansive rule that adds significantly to the reach and scope of the statute by expanding the definition of an "unlawful discriminatory practice." There is nothing in Section 295(5) to presage regulatory authority to define the scope of the statute. In fact, the statute is silent on whether DHR is authorized to promulgate interpretative guidelines or define the reach of the "discriminatory practices" the Legislature sought to curtail when passing the legislation. In the absence of such language, DHR lacked the authority to expand the scope of a "discriminatory practice."

Nor can there be any argument that the regulation was "required" by "necessary implication." *Matter of City of New York v State of New York Commn. on Cable Tel.,* 47 NY2d 89, 92, 390 NE2d 293, 416 NYS2d 786 (1979). The statute governs a wide-range of discriminatory practices and does not leave "implied" – but unstated – any level of uncertainty regarding the individuals the Legislature sought to protect from discrimination. To the contrary, the statute identifies "age, race, creed, color, national origin, sexual orientation gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic abuse" as the protected categories within its reach. NY CLS Exec §296(1)(a).[2] That detailed list does not suggest other protected categories are only awaiting regulatory revelation.

Finally, the Legislature has amended the statute on several occasions over the years to expand its scope. *See, e.g.,* NY CLS Exec §296, Laws 1984, ch. 98, §1 (clarifying and codifying "the law of this state with regard to the employment practices applicable to employees who are

---

[2] As set forth in previous briefing, the phrases "familial status" and "marital status" do sweep expectant father's into the statute's ambit. Defs. Opening Mem. p. 8.

4

pregnant"); NY CLS Exec §296, Laws 2002, ch. 2, §1 (prohibiting discrimination based on sexual orientation); NY CLS Exec §296, Laws 2003, ch. 106, §§1 and 1-a (military status); NY CLS Exec §296, Laws 2019, ch. 8, §§1 and 25 (gender identity or expression). The amendments lead to several inescapable conclusions. First, the Legislature views the scope of anti-discrimination protections provided by Article 15 of the Human Rights as its prerogative, and has not left the issue to the DHR. Second, the Legislature over the years has had no difficulty expanding the scope of the statute based on evolving policy considerations – an inherently legislative function. And third, the Legislature has not looked to or relied on the DHR as a source for defining the reach of the statute.

### AN ANALYSIS OF THE FOUR FACTORS IDENTIFIED IN THE *BOREAILI* DECSION CONFIRMS THE DIVISION EXCEEDED ITS AUTHORITY

While RedRoute believes the Court need not go beyond the text of the statute and the offending regulation to conclude DHR has overreached with Section 466.14(c)(1), a review of the four factors delineated in *Boreali* and discussed in *Greater N. Y. Taxi Ass'n* confirms the regulation goes too far. The first factor is whether the agency did more than "balanc[e] costs and benefits according to preexisting guidelines," but instead made "value judgments entail[ing] difficult and complex choices between broad policy goals" to resolve social problems. *Greater N.Y. Taxi Ass'n.,* 25 NY3d at 610, 63NE3d at 638, 15 NYS3d at 731, quoting *Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v. New York City Dept. of Health & Mental Hygiene*, 23 NY3d 681, 698, 992 NYS2d 480, 489, 16 NE3d 538, 547. Here, there were no "pre-existing guidelines against which to balance simple costs and benefits; instead, the Division made a policy decision to expand the scope of the definition of "unlawful discrimination" – a decision that reside exclusively with the Legislature.

The second factor is whether the agency merely filled in details of a broad policy or, instead, "wrote on a clean slate, creating its own comprehensive set of rules without benefit of legislative guidance." *Boreali,* 71 N.Y. 2d at 13, 517 N.E.2d at 1356, 523 N.Y.S. 2d at 470. While Section 466.14(c)(1) is short and cannot fairly be characterized as a "comprehensive set of rules" written on "a clean slate," it also cannot reasonably viewed as a regulation that simply "fills in the details."

The third *Boreali* factor is whether the legislature has unsuccessfully tried to reach agreement on the issue, which would indicate that the matter is a policy consideration for the elected body to resolve *Boreali,* 71 N.Y. 2d at 13, 517 N.E.2d at 1356, 523 N.Y.S. 2d at 470. RedRoute's research has not unearthed any failed legislative efforts regarding the associational issue identified here, but the historical amendments expanding the scope of the protected categories reached by Article 15 confirm the issue is a policy issue for the Legislature, and not the Division, to determine.[3]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss.

Dated**:** May 6, 2022                                          **BARCLAY DAMON LLP**

                                                                 By: /s/ Brian E. Whiteley
                                                                 Brian E. Whiteley
                                                                 *Attorneys for Defendant*s
                                                                 160 Federal Street, Suite 1010
                                                                 Boston, Massachusetts 02110
                                                                 Telephone:  (617) 274-2900
                                                                 Email: bwhiteley@barclaydamon.com

---

[3] The fourth and final *Boreali* factor – whether the agency used special expertise or competence in the field to develop the challenged regulations (*Boreali,* 71 NY2d at 13-14, 517 N.E.2d at 1353, 523 N.Y.S. 2d at 468) – is inapplicable in this case.

6

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2022, I electronically filed the foregoing Supplemental Memorandum Regarding New York Compilation of Codes, Rules & Regulations, Tit. 9, § 466.14(c)(1) using the CM/ECF system, which sent electronic or other notification of such filing to all counsel of record in this case.

*/s/ Brian E. Whiteley*
Brian E. Whiteley
