UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MATTHEW RONEN,

               Plaintiff,                **MEMORANDUM AND ORDER**

        v.                         21-CV-2732 (RPK) (RML)

REDROUTE, INC. and BRIAN SCHIFF,

               Defendants.
--------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      Plaintiff Matthew Ronen brings this action against his former employer, RedRoute, Inc.,

and its Chief Executive Officer, Brian Schiff.  He alleges that defendants discriminated and

retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

*et seq.*, the New York State Human Rights Law ("NYSHRL"), and the New York City Human

Rights Law ("NYCHRL").  For the reasons that follow, Ronen's claims of discrimination under

Title VII and the NYSHRL are dismissed, as are his claims for retaliation under Title VII, the

NYSHRL, and the NYCHRL.  Ronen's claim for discrimination under the NYCHRL may proceed.

## BACKGROUND

      The following facts are drawn from the complaint and are assumed true for the purposes

of this order.

      RedRoute, a "call center automation company," Second Am. Compl. ¶ 28, hired Ronen as

its first "senior" employee in March 2019, *id.* ¶ 29.  "[L]ess than six months" later, Ronen was

promoted to Head of Business Development.  *Id.* ¶ 30.

      In September 2020, over Ronen's protest, Schiff and others fired a female employee

because she became pregnant.  *Id.* ¶¶ 50–57.  Specifically, at a meeting on September 3, 2020, a

senior executive told Ronen that Schiff had been trying to determine if the female employee was pregnant because, if so, Schiff wanted to fire her to avoid paying for maternity leave. *Id.* ¶¶ 50–51.  Ronen objected, *id.* ¶ 52, and Schiff eventually agreed not to fire the employee "at that time," *id.* ¶ 54.  But after the female employee went to a "doctor's appointment in September 2020 . . . the Company immediately terminated her employment, citing pretextual performance reasons belied by her excellent performance up until that time."  *Id.* ¶ 55.  Ronen confronted Schiff, but Schiff "brushed Mr. Ronen's complaints aside by bragging that he had terminated another female employee . . . the day after [she] had told him that she was pregnant."  *Id.* ¶ 57.  In the case of both employees, Schiff falsely claimed that the terminations had been "for performance-related reasons."  *Id.* ¶ 58.  Schiff later told Ronen "that he thought RedRoute should forego hiring any women, so that they would not have to grant any parental leave."  *Id.* ¶ 60.

Meanwhile, Ronen secured investments in RedRoute from several firms, *id.* ¶¶ 32–35, and "played a pivotal role in helping RedRoute survive the challenges posed by the COVID-19 pandemic," *id.* ¶ 36.  Because of Ronen's "outstanding performance," RedRoute "had Mr. Ronen start performing the duties of the [Chief Operating Officer ("COO")] of the company and he was given a $20,000 raise in his base salary as of October 1, 2020."  *Id.* ¶ 38.  "In subsequent discussions," Schiff and Ronen agreed that Ronen "would formally be installed as the COO on January 1, 2021, with an accompanying raise in his salary."  *Id.*  ¶ 42.  RedRoute also "announced internally to RedRoute's leadership employees that Mr. Ronen would be named the COO in mid-November 2020."  *Id.* ¶ 43.

In November 2020, Ronen told Schiff that his wife was pregnant.  *Id.* ¶ 62.  In response, Schiff asked Ronen if he could "delay starting a family."  *Ibid.*  Less than a month later, Ronen received a performance review that "contained phantom criticisms about his performance."  *Id.*

¶ 63.  Schiff informed Ronen that his promotion to COO would be delayed until February 2021, "ostensibly so that Mr. Ronen could get more experience."  *Id.* ¶ 64 (quotation marks omitted). He later told Ronen that Ronen shouldn't announce his wife's pregnancy to others "until RedRoute had a plan in place."  *Id.*  66.

In late December 2020, Schiff asked Ronen whether he intended to take paternity leave. *Id.* ¶ 67.  Ronen replied that "although he intended to take paternity leave, he understood that his responsibilities as the soon to be COO could make taking the full 16 weeks allotted by RedRoute's policies difficult."  *Id.* ¶ 68.  He explained that "because of complications with her pregnancy, his wife would be giving birth to their child two-weeks early" and that "he anticipated having to care for her and his newborn while she recovered."  *Id.* ¶ 69.  Still, Ronen said, "he was willing to be 'flexible'" to accommodate the company.  *Id.* ¶ 70.  Schiff replied, "I'm glad to hear that because this is something I've been concerned about."  *Id.* ¶ 71.  Less than two weeks later, Schiff advised Ronen that RedRoute had decided to end his employment—assertedly because of poor performance.  *Id.* ¶¶ 72–73.

Ronen now sues RedRoute and Schiff, raising claims under Title VII, as well as state and city antidiscrimination law.  He alleges that defendants engaged in sex discrimination in violation of Title VII by firing him due to his wife's pregnancy, which he describes as a form of discrimination against him "for his association with a protected class."  *Id.* ¶ 79; *see id.* ¶¶ 78–82. He also alleges that defendants violated Title VII's anti-retaliation provision by firing him in retaliation for his objections to Schiff's firing the pregnant RedRoute employee.  *Id.* ¶¶ 83–87; *see* Pl.'s Mem. of L. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") 24–25 (Dkt. #18) (describing plaintiff's theory).

Ronen raises similar allegations of discrimination and retaliation under state and city law. Under state law, Ronen alleges that defendants "discriminated against [him] on the basis of his association with a pregnant woman in violation of the NYSHRL," Second Am. Compl. ¶ 89, and "retaliated against [him] in violation of the NYSHRL," *id.* ¶ 94.

And under New York City law, plaintiff alleges that defendants violated the NYCHRL by "discrimin[ating] against [him] on the basis of his caregiver status and his association with a pregnant woman," *id.* ¶ 99, and by "retaliating against [him]," *id.* ¶ 104.

Defendants have moved to dismiss the complaint. *See* Not. of Mot. to Dismiss (Dkt. #17).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. (quotations omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotations omitted).

At the motion-to-dismiss stage, a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that are subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of*

*N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). When reviewing the complaint on a motion to dismiss, the court must accept all facts alleged in a complaint as true. *Iqbal*, 556 U.S. at 678. The court, however, is not obligated to adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Id*. at 678–79.

## DISCUSSION

Ronen's discrimination claims under Title VII and the NYSHRL are dismissed because he has not plausibly alleged that he suffered discrimination because of his own protected characteristics. Ronen's claim for discrimination under the more broadly written NYCHRL may proceed. Finally, Ronen's retaliation claims under Title VII, the NYSHRL, and the NYCHRL are dismissed because he has not plausibly alleged that he suffered retaliation for his protected activity.

## I.    Associational Discrimination Under Title VII and the NYSHRL

Ronen alleges that defendants violated Title VII and the NYSHRL by firing him based on his association with his wife, a pregnant person. This theory cannot sustain a claim under these statutes, because they reach only employment decisions based on an employee's own sex, pregnancy status, or other protected trait.

### A.    Title VII

Ronen's allegation that RedRoute fired him because of his association with a pregnant woman does not state a claim under Title VII. Title VII does not comprehensively regulate the employment relationship, but instead makes it illegal to discharge an individual because of certain characteristics. Specifically, Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act ("PDA") amended Title VII to specify that "'because of sex' . . . include[s] . . . because of or on the basis of pregnancy, childbirth, or related medical conditions." *Id*. § 2000e(k). The PDA also specifies that "women affected by pregnancy,

childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Ibid.*

Plaintiff's allegations that RedRoute terminated his employment because of his *wife's* pregnancy do not state a claim under these provisions. Title VII prohibits an employer from taking an adverse employment action against an individual only because of "*such individual's* . . . sex," 42 U.S.C. § 2000e-2(a)(1) (emphasis added), including pregnancy, *id.* § 2000e(k). Accordingly, the statute prohibits an employer from discharging an employee because of his or her sex (with sex defined to include pregnancy). But adverse employment actions based on someone else's sex (or pregnancy) are not within the narrow category of employment actions that Title VII prohibits. *See Ninying v. N.Y.C. Fire Dep't*, 807 F. App'x 112, 115 n.2 (2d Cir. 2020) ("Title VII does not provide a cause of action based on . . . the protected status of one's spouse."); *see also Bostock v. Clayton County*, 590 U.S. 644, 658–59 (2020) (emphasizing Title VII's repeated reference to discrimination against an "individual" or "such individual" as central to the interpretation of the statute, in the context of rejecting the argument that Title VII is "focus[ed] on differential treatment between the two sexes as groups").

The PDA did not expand Title VII to encompass claims based on the protected characteristics of others. That enactment clarified the definition of sex by specifying that "'because of sex' . . . include[s] . . . on the basis of pregnancy." 42 U.S.C. § 2000e(k). In other words, "the PDA requires that pregnancy, and related conditions, be properly recognized as sex-based characteristics of women." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003). Thus, an individual fired because of her pregnancy can bring a claim under Title VII's prohibition on firing an individual because of her sex. But because the PDA does not create a new freestanding cause of action, an individual raising a claim under Title VII must still be claiming that his or her

employer took action because of "such individual's" protected characteristic, such as sex, 42 U.S.C. § 2000e-2(a)(1), now defined to include pregnancy. Because Ronen is alleging that RedRoute discharged him because of his *wife*'s protected status, not his own, he has not alleged facts falling within Title VII's prohibition on "discharg[ing] any individual . . . because of such individual's . . . sex," *ibid.*, including pregnancy.

Consistent with the statutory text, courts appear to be uniform in concluding that a plaintiff cannot "state an employment discrimination claim" under Title VII "based on an adverse employment action allegedly taken because of a partner's pregnancy." *Griffin v. Sisters of Saint Francis, Inc.*, 489 F.3d 838, 842 (7th Cir. 2007) (per curiam); *see Soenen v. Keane Frac, LP*, No. 20-CV-1297 (MWB), 2021 WL 2290823, at *5 (M.D. Pa. June 4, 2021) (holding that plaintiff failed to state a claim under Title VII when he "alleg[ed] that he was treated less favorably than employees whose partners were not pregnant," because "[t]his, standing alone, does not state a claim for sex discrimination"); *Pennington v. S. Motion, Inc.*, No. 16-CV-110 (DMB) (DAS), 2017 WL 3897166, at *5 (N.D. Miss. Sept. 6, 2017) (rejecting argument that "to fire an employee because of the pregnancy status of the employee's spouse is sex discrimination" under Title VII); *Marchioli v. Garland Co.*, No. 11-CV-124 (MAD) (ATB), 2011 WL 1983350, at *5 (N.D.N.Y. May 20, 2011) (holding that allegation that plaintiff was terminated as "a result of his partner's pregnancy" did not state a claim under Title VII); *see also Van Soeren v. Disney Streaming Serv.*, No. 19-CV-10196 (NRB), 2020 WL 6131255, at *3 (S.D.N.Y. Oct. 16, 2020) ("[W]hereas Title VII protects a pregnant employee, it does not protect an employee whose spouse is pregnant."); *Adler v. S. Orangetown Cent. Sch. Dist.*, No. 05-CV-4835 (SCR), 2008 WL 190585, at *10 (S.D.N.Y. Jan. 17, 2008) (dismissing male employee's Title VII claim premised on his receiving

7

less favorable work "based on [his wife's] pregnancy" because "[t]his status is not protected by Title VII").

Plaintiff errs in contending that the concept of "associational discrimination" permits him to recover under Title VII on the ground that he was discharged due to his wife's pregnancy. Pl.'s Opp'n 13. In its associational discrimination cases, the Second Circuit has held that Title VII prohibits an employer from discriminating against an employee for being in an interracial relationship, *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008), or a same-sex relationship, *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 112–13 (2d Cir. 2018) (en banc), *aff'd*, *Bostock*, 590 U.S. 644. But the Second Circuit explained that the plaintiffs in those cases could proceed under Title VII because they were alleging discriminatory actions based in part on the plaintiff's own race or sex. In particular, the court of appeals explained, "where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's *own* race." *Holcomb*, 521 F.3d at 139. Similarly, sexual-orientation discrimination claims are viable because discrimination "motivated by an employer's opposition to romantic association between particular sexes . . . is discrimination based on the employee's own sex." *Zarda*, 883 F.3d at 112–13. The Supreme Court similarly found sexual-orientation discrimination to be covered under Title VII precisely because it is based in part on an employee's own sex. *Bostock*, 590 U.S. at 661. Plaintiff's claim that he suffered discrimination based on his spouse's pregnancy lacks this crucial ingredient that brings associational discrimination claims within the ambit of Title VII.

Plaintiff is similarly mistaken in contending that the Supreme Court "implicit[ly]" sanctioned associational discrimination claims that are untethered from an employee's own protected characteristics in *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669

(1983).  Pl.'s Opp'n 14.  *Newport News* found a hospitalization-coverage plan to be discriminatory because it disfavored male employees as compared to female ones.  *Newport News*, 462 U.S. at 685.  The benefit plan covered hospitalizations for both employees and their spouses, but it contained an exclusion for pregnancy-related hospitalizations of spouses.  *Id.* at 672.  In a decision rendered before any states recognized same-sex marriage, the Supreme Court reasoned that by "discriminat[ing] against female spouses in the provision of fringe benefits" through a pregnancy exclusion, the plan inherently "discriminat[ed] against male employees," because "the sex of the spouse is always the opposite of the sex of the employee."  *Id.* at 684–85.  Accordingly, the plan's terms ran afoul of "the original prohibition [in Title VII] against discrimination on the basis of an employee's sex . . . by discriminating against male employees."  *Id.* at 685.  In sum, *Newport News* simply applied the principle that an employer may not discriminate against employees based on their own protected characteristics (like sex), at a time when discriminating against employees with pregnant spouses necessarily entailed discriminating against male employees.  Plaintiff can make no comparable argument here, since it is no longer the case that only male employees could have pregnant spouses.

In sum, plaintiff has not plausibly alleged that his employer discriminated against him based on his own sex or other protected trait.  Accordingly, plaintiff has failed to state a claim for discrimination under Title VII.

**B.    NYSHRL**

As with his Title VII claim, Ronen argues that defendants discriminated against him on the basis of sex in violation of the NYSHRL by firing him based on his association with his pregnant wife.  He additionally argues that his termination constituted discrimination on the basis of disability—a characteristic protected by the NYSHRL (but not Title VII)—because his wife was experiencing complications related to her pregnancy.  *See* Pl.'s Opp'n 17–21.  Because the

NYSHRL has the same basic textual limitations as Title VII, Ronen's claim for associational discrimination under the NYSHRL under either theory fails for essentially the same reasons as his similar Title VII claim.

The language of the NYSHRL tracks Title VII, making it unlawful "[f]or an employer . . . because of an individual's . . . sex [or] disability . . . to discharge from employment such individual," N.Y. Exec. Law § 296(1)(a); *compare* 42 U.S.C. § 2000e-2(a)(1) (making it unlawful for an employer "to discharge any individual . . . because of such individual's . . . sex"). In addition, like Title VII, the NYSHRL treats discrimination based on an individual's pregnancy status as a form of sex discrimination. *Elaine W. v. Joint Diseases N. Gen. Hosp., Inc.*, 613 N.E.2d 523, 525 (N.Y. 1993). Especially relevant here, the NYSHRL mirrors Title VII in using the phrase "such individual" to make clear that the type of discharge that is prohibited is discharge based on the employee's own protected characteristics. Given that linkage, plaintiff's allegations do not stake a claim for discrimination under the NYSHRL for the same reason that his allegations fall short under Title VII. Plaintiff has not alleged that he was discharged based on his own sex (including pregnancy) or disability, and he has therefore not alleged that his employer violated the prohibition on "because of an individual's sex [or] disability . . . discharg[ing] from employment *such individual*." N.Y. Exec. Law § 296(1)(a) (emphasis added); *see Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-8837 (GHW), 2022 WL 912940, at *7 n.7 (S.D.N.Y. Mar. 28, 2022) (rejecting associational discrimination claim under the NYSHRL based on parallel textual analysis).

This conclusion is not altered by the 2019 amendment to the NYSHRL directing that the statute "shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300.

Even a statute that is to be construed liberally "still must be interpreted based on its plain meaning," as the New York Court of Appeals has held in interpreting a similar provision in the NYCHRL. *McCabe v. 511 W. 232nd Owners Corp.*, __N.E.3d__, No. 91, 2024 WL 5126078, at *3 (N.Y. Dec. 17, 2024) (citation omitted) (construing provision stating that the NYCHRL should be construed to accomplish its "uniquely broad and remedial purposes . . . regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title have been so construed"). Here, as explained above, Section 296 of the NYSHRL is unambiguous in stating it prohibits discharge of an individual based on the sex, disability, or other enumerated trait of "such individual." N.Y. Exec. Law § 296(1)(a). Because the statute does not contain language that could be read to prohibit an employee's termination based on the protected characteristics of *another* individual—even on a liberal construction—Ronen's associational discrimination theory is not viable under the NYSHRL.[*]

In arguing that "the NYSHRL's protections do not depend upon the plaintiff's membership in a protected class," Pl.'s Opp'n 17–20, Ronen relies on a decision from New York's intermediate appellate court, *Chiara v. Town of New Castle*, 2 N.Y.S.3d 132, 139–41 (App. Div. 2015). When a state's highest court has not decided a question of state law, a federal court must predict how the state's highest court would resolve it. *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 499 (2d Cir. 2020). In doing so, the federal court "appl[ies] the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a

---

[*] The portion of this proviso concerning the interpretation of federal civil rights laws is of no moment because, as explained above, it is the NYSHRL's text that forecloses plaintiff's associational discrimination theory. Before the 2019 amendment, New York courts gave weight to federal interpretations of Title VII in construing the NYSHRL. For example, the Court of Appeals described its approach to the NYSHRL and Title VII as one that "attempted to resolve both federal and state employment discrimination cases consistently." *Aurecchione v. N.Y. State Div. of Hum. Rts.*, 771 N.E.2d 231, 233 (N.Y. 2002). The 2019 amendment calls that practice into question. But as explained above, it is the NYSHRL's text, rather than alignment with federal precedent, that compels the conclusion that the Section 296 of the NYSHRL prohibits discriminating against an employee based on the employee's own protected attributes.

different conclusion." *Ibid.* (citation omitted).  Here, a pair of Appellate Division cases have interpreted the NYSHRL to broadly cover associational discrimination: *Chiara*, on which plaintiff relies, and *Macchio v. Michaels Electrical Supply Corp.*, 51 N.Y.S.3d 134, 137 (App. Div. 2017), which simply applied *Chiara*.

But "there is persuasive evidence that the New York Court of Appeals would reach a different conclusion than *Chiara*—principally the text of the statute." *Arazi*, 2022 WL 912940, at *8 n.7.  Neither *Chiara* nor *Macchio* engaged with the NYSHRL's text or discussed how a provision making it unlawful "[f]or an employer . . . because of an individual's . . . sex [or] disability . . . to discharge from employment such individual," N.Y. Exec. Law § 296(1)(a), could cover discharging an individual because of someone else's sex, pregnancy, or disability.

Instead, the Appellate Division based its interpretation on Title VII decisions.  It started from the premise that claims under Section 296 of the NYSHRL and Title VII are "analytically identical." *Chiara*, 2 N.Y.S.3d at 139, 141 (citation omitted).  It then reasoned that the NYSHRL should be construed to reach associational discrimination because Title VII has been construed to allow associational discrimination claims. *Id.* at 140 (discussing *Holcomb*, 521 F.3d 130, and *Parr v Woodmen of the World Life Ins. Co.*, 791 F.2d 888 (11th Cir. 1986)); *see also Macchio*, 51 N.Y.S.3d at 137 (characterizing *Chiara* as "looking in part to federal precedent").

But that interpretation rests on a misunderstanding of Title VII caselaw.  The federal cases on which the *Chiara* court relied reasoned that an employee fired for being in an interracial relationship could state a claim under Title VII because an employer who fires an employee for being in such a relationship is motivated, in part, by the employee's own race. *See Holcomb*, 521 F.3d at 139 ("[W]here an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's *own*

race."); *Parr*, 791 F.2d at 892 ("Where a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of *his* race."). That reasoning does not extend to associational discrimination claims like the one here, in which the employee's own protected trait (such as sex) is not alleged to play a role in the employer's decision-making. *See supra* pages 5–9. Indeed, as explained above, federal courts have consistently *rejected* associational discrimination claims under Title VII in cases like this one, where an employer is alleged to have discharged a person based solely on the pregnancy status or other protected trait of a person other than the plaintiff-employee. *See supra* pages 7–8. Since *Chiara* (and *Macchio*) failed to grapple with the language of the NYSHRL and relied on a misunderstanding of Title VII caselaw, the New York Court of Appeals is unlikely to follow them insofar as they sanction claims of associational discrimination based on decision-making that is not alleged to have been based in part on an employee's own protected trait. *See Arazi*, 2022 WL 912940, at *8 n.7 (declining to follow *Chiara* for this reason).

For essentially the same reason, plaintiff cannot inject life into his claim by invoking agency deference. *See* Pl.'s Opp'n 17–18; Pl.'s Suppl. Mem. (Dkt. #22). Under New York law, "the Legislature may . . . after fixing a primary standard, endow administrative agencies with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation." *Juarez v. N.Y. State Off. of Victim Servs.*, 167 N.E.3d 478, 483 (N.Y. 2021) (citation omitted). When such a grant of authority exists, an agency's rule is valid only if it falls within the scope of that grant and if the regulation "consistent with the statutory language and underlying purpose." *Id.* at 482 (citation omitted). In contrast, a regulation is invalid if it is "inconsistent with the statutory text." *Id.* at 483. Here, Ronen invokes a regulation issued by the State's Division of Human Rights stating that the term "unlawful discriminatory

practice" in the NYSHRL "shall be construed to prohibit discrimination . . . because of [an] individual's . . . association with a member . . . of a protected category covered under the relevant provisions of the Human Rights Law." N.Y. Comp. Codes R. & Regs. tit. 9, § 466.14(c)(1); *see* Pl.'s Opp'n 17–18; Pl.'s Suppl. Mem. In enacting that regulation, the Division of Human Rights relied on a grant of authority to the agency "[t]o adopt, promulgate, amend and rescind suitable rules and regulations to carry out the provisions of the" the NYSHRL. N.Y. Exec. Law § 295(5); *see* N.Y. Comp. Codes R. & Regs. tit. 9, § 466.14(a) (explaining statutory authority invoked by the agency).

Plaintiff cannot prevail under Section 296 based on that rule, however, because it is inconsistent with the statutory text. The authorization invoked by the agency permits the agency to enact rules only to "carry out" the NYSHRL's provisions—not to alter or define their scope. *See N.Y. Constr. Materials Ass'n, Inc. v. N.Y. State Dep't of Env't Conservation*, 921 N.Y.S.2d 686, 689 (App. Div. 2011) (concluding that provision authorizing agency to "'promulgate regulations as necessary and appropriate to carry out [a statute's] provisions' cannot be read to confer authority on that agency to make policy determinations as to the scope of the statute's coverage") (citation omitted). Moreover, the NYSHRL provides that "[t]he term 'unlawful discriminatory practice' includes *only* those practices specified in sections two hundred ninety-six, two hundred ninety-six-a, two hundred ninety-six-c and two hundred ninety-six-d of this article," N.Y. Exec. Law § 292(4) (emphasis added)—thereby making clear that only practices actually enumerated in the statute qualify as unlawful discriminatory practices. As explained above, an employer's firing of an employee based on the sex (including pregnancy status) or disability of another person is not among those prohibited practices, on even the most liberal reading of the statutory language. Indeed, the Division itself did not explain how its reading could be squared

with the "such individual" limitations in Section 296(1)(a).  *See* Proposed Rulemaking, N.Y. Reg., Volume 38, No. 10, at 34 (Mar. 9, 2016).  Because the statutory text is not compatible with the agency's regulation, the Division of Human Rights' rule does not enable Ronen to state a claim under Section 296 of the NYSHRL.

## II.    Discrimination Under the NYCHRL

Ronen advances two theories of discrimination under the more broadly worded NYCHRL: discrimination based on association with a disabled person and discrimination based on caregiver status.  *See* Second Am. Compl. ¶ 99; Pl.'s Opp'n 9–12, 20–21.  For the reasons explained below, those claims may proceed.

### A.    Association With a Disabled Person

Ronen has adequately pleaded a claim for discrimination based on association with a disabled person—namely, Ronen's pregnant spouse.  Using language similar to the NYSHRL, the NYCHRL provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of the actual or perceived . . . disability . . . of any person . . . [t]o discharge from employment such person."  N.Y.C. Admin. Code § 8-107(1)(a).  Unlike the NYSHRL, the NYCHRL goes on to state that the law "shall be construed to prohibit . . . discrimination against a person because of the actual or perceived . . . disability . . . of a person with whom such person has a known relationship or association."  *Id.* § 8-107(20).  Disability is defined as "any physical, medical, mental or psychological impairment," including the "impairment of any system of the body."  *Id.* § 8-102.

The operative complaint contains allegations sufficient to support a claim under this portion of the statute.  Ronen alleges that shortly before he was fired, Schiff inquired about whether he would take paternity leave, and that Ronen told him that he intended to do so, explaining that his wife was experiencing "complications with her pregnancy," would undergo surgery to deliver

pre-term, and would "require care during a convalescent period" after the surgery.  Second Am. Compl. ¶ 69; *see id.* ¶ 98.  Ronen further alleges that less than two weeks after that conversation, Schiff told him that he had decided to end Ronen's employment.  *Id.* ¶¶ 69–72.  These allegations regarding Ronen's disclosures and Schiff's actions plausibly suggest that Ronen was terminated at least in part based on his association with his spouse, who was about to undergo surgery due to a pregnancy with medical complications.

Defendants argue that Ronen's allegations are inadequate because pregnancy does not qualify as a disability and in any event, the operative complaint does not invoke the concept of disability discrimination.  Defs.' Reply Mem. in Support of Defs.' Mot. to Dismiss 7 (Dkt. #19) ("Defs.' Reply").  But these arguments lack merit.  The definition of a "disability" under the NYCHRL is broader than under the federal Americans with Disabilities Act.  *See Giordano v. City of New York*, 274 F.3d 740, 753 (2d Cir. 2021).  Even assuming that pregnancy standing alone does not qualify as a disability, Ronen's allegations that his wife was experiencing "complications" that would require her to undergo surgery to deliver pre-term adequately plead that his wife's particular pregnancy involved "[a]n impairment of any system of the body," N.Y.C. Admin. Code § 8-102; *compare Lin v. Amazon.com Servs., LLC*, No. 21-CV-6203 (KAM) (MMH), 2024 WL 4266008, at * (E.D.N.Y. Sept. 23, 2024) ("[A] normal pregnancy, on its own, does not qualify as a disability within the meaning of the . . . NYCHRL"), *with McKenna v. Santander Investment Sec., Inc.*, No. 21-CV-941 (DLC), 2022 WL 2986588, at *7 (S.D.N.Y. July 28, 2022) (finding that a triable issue of fact existed on the existence of a disability under the NYCHRL based on evidence of "medical complications" arising from pregnancy), *and Figueroa v. City of New York*, No. 05-CV-9594 (JGK), 2011 WL 309061, at *1 (S.D.N.Y. Feb. 1, 2011) (same, based on evidence of a "high-risk pregnancy" and resulting conditions like "anemia[] and hemorrhaging").  Moreover, the

16

operative complaint places defendants on notice of a disability discrimination claim because it alleges that defendants violated the NYCHRL by "discriminat[ing] against Plaintiff on the basis of . . . his association with a pregnant woman," Second Am. Compl. ¶ 99, while making clear that the pregnancy in question involved medical "complications" that qualify as a disability under the NYCHRL's definition, *see id.* ¶ 69.

### B.    Caregiver-Status Discrimination

Ronen's caregiver-status discrimination claim may also proceed because the arguments for dismissal offered in defendants' memorandum in support of their motion lack merit.

In the cursory discussion of Ronen's NYCHRL claim for caregiver-status discrimination in their motion to dismiss, defendants principally contend that the NYCHRL—like federal and state law—does not address discrimination based on caregiver status. Defs.' Mem. of L. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mot.") 1 (Dkt. #17-1) (contending that the operative complaint "fails to allege Ronen's membership in a protected class under the governing statutes" because "'caregivers' are not within the class of employees protected by the statutes"). That argument is flatly incorrect, though, because the NYCHRL, which is broader than federal and state law, makes it an unlawful discriminatory practice "[f]or an employer . . . because of the actual or perceived . . . caregiver status . . . of any person . . . to discharge from employment such person." N.Y.C. Admin. Code § 8-107(1)(a).

Defendants also suggest that Ronen failed to plausibly allege he was a caregiver—under the NYCHRL, "a person who provides direct and ongoing care for" one of a number of possible care recipients, including a spouse with a disability. *Id.* § 8-102. Specifically, defendants contend that the operative complaint "contains no mention of Ronen caring for any other individual, nor does it provide any allegations regarding potential caregiving status." Defs.' Mot. 8–9 (argument made in the context of NYSHRL claim). But Ronen did describe facts indicating that he would

need to serve as a caregiver for his wife, by alleging that he told Schiff that his wife was suffering pregnancy complications; that she would require a period of convalescence following surgery; and "that he anticipated having to care for her . . . while she recovered."  Second Am. Compl. ¶ 69. Defendants are therefore incorrect in contending that Ronen failed to make any allegations about his status as a caregiver.

Because defendants' arguments for dismissal in their motion to dismiss lack merit—and the further arguments raised only in defendants' reply brief are forfeited, *Ravelombonjy v. Zinsou-Fatimabay*, 632 F. Supp. 3d 239, 258 n.14 (S.D.N.Y. 2022); *see* Defs.' Reply 9—Ronen's caregiver-status claim under the NYCHRL may proceed.

## III.    Retaliation under Title VII, the NYSHRL, and the NYCHRL

Ronen's claims of retaliation are dismissed because Ronen has failed to adequately allege a causal connection between his protected activity and the employment actions he protests.

Under Title VII, to survive a motion to dismiss on a retaliation claim, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action— against him, (2) 'because' he has opposed any unlawful employment practice."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citing 42 U.S.C. § 2000e-3(a)). Under Title VII, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  *Ibid.*

Retaliation claims under the NYCHRL and NYSHRL are assessed under a "similar but slightly broader standard."  *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024). Under the NYCHRL, "a plaintiff claiming retaliation must demonstrate 'that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'"  *Ibid.* (quoting *Mihalik v.*

*Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013)).  But as to causation, "the NYCHRL only requires that the protected activity be a 'motivating factor' in the adverse action, and not its 'but-for' cause, as would be required under federal law." *Lee v. Riverbay Corp.*, __F. Supp. 3d__, No. 22-CV-7504 (LTS), 2024 WL 4312166, at *11 (S.D.N.Y. Sept. 27, 2024) (citing *Mihalik*, 715 F.3d at 112; *Chin v. N.Y.C. Dep't of Corr.*, No. 23-CV-5268 (AMD) (JAM), 2024 WL 2258033, at *3 (E.D.N.Y. May 17, 2024)).  That said, even under the NYCHRL, "a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." *Mihalik*, 715 F.3d at 113; *see Forrester v. Corizon Health, Inc.*, 752 F. App'x 64, 66 (2d Cir. 2018) ("Although the NYCHRL's retaliation provision is broader than at least some federal anti-discrimination laws, a plaintiff bringing a retaliation claim under the NYCHRL still must adduce admissible evidence that retaliation was at least a partial motivating factor.").  In *Qorrolli*, the Second Circuit indicated that the NYSHRL's standard for actionable retaliation aligns with that of the NYCHRL.  *See Qorrolli*, 124 F.4th at 122–23 (relying on 2019 amendments to liberal construction provision).

Ronen's retaliation claim falters under all three statutes because he has not pleaded facts from which a jury could draw a plausible inference that Ronen's protected activity was either a but-for cause or a motivating factor in the employment action he protests—namely, his termination.  "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).  When addressing

indirect proof, the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." *Ibid.* (citation omitted). "[M]ost courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference," *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) (citing *Walder v. White Plans Bd. of Educ.*, 738 F. Supp. 2d 483, 503–04 (S.D.N.Y. 2010) (collecting cases)), though in particular circumstances the Second Circuit has allowed a lapse of as long as seven months, *see Brown v. Waterbury Bd. of Educ.*, 247 F. Supp. 3d 196, 216 (D. Conn. 2017) (collecting cases).

The absence of a bright line allows a court "to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). For instance, "[w]here defendants are alleged to have retaliated at the first available opportunity, the window of temporal proximity can be extended." *Belyea v. City of Glen Cove*, No. 20-CV-5675 (MKB), 2022 WL 3586559, at *16 (E.D.N.Y. Aug. 22, 2022) (collecting cases).

Conversely, though, an inference of retaliation from temporal proximity is undercut when protected activity was followed by a promotion or pay raise—with the adverse action at issue in the lawsuit coming only at some later date. *See, e.g.*, *Rivera v. Greater Hudson Valley Health Sys.*, No. 21-CV-1324 (NSR), 2023 WL 2588308, at *17 (S.D.N.Y. Mar. 21, 2023) ("This subsequent promotion following Plaintiff's May 2019 complaint undermines the causal connection between that complaint and his eventual termination."); *Byrne v. Telesector Res. Grp., Inc.*, No. 04-CV-76 (WMS), 2007 WL 962929, at *12 (W.D.N.Y. Mar. 29, 2007) ("Byrne's EEOC filing was most closely followed, on August 17, 2003, by her promotion . . . and a related pay increase . . . [which] alone is sufficient to break the causal link in Byrne's claim that Verizon

20

retaliatorily sought to deny her promotional opportunities."); *Cuttino v. Genesis Health Ventures, Inc.*, No. 04-CV-575 (MRK), 2006 WL 62833, at \*8 (D. Conn. Jan. 11, 2006) ("Ms. Cuttino's retaliation accusation is particularly unpersuasive in view of the fact that following two of her earlier complaints about unequal pay, in April 1999 and sometime thereafter, Ms. Cuttino was given multiple pay raises by Ms. Albert-Smith."); *see also Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997) (holding that supervisors' giving plaintiff "positive evaluations and twice recommend[ing] that she be promoted" following protected activity was "utterly inconsistent with an inference of retaliation"); *cf. Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 47–48 (2d Cir. 2019) (holding that transfer to supervisory position did not undercut inference of retaliation when plaintiff offered evidence that the promotion to a role she had not sought was actually a retaliatory work assignment, in which she "was given no training," "criticized for being deficient," and "denied all aspects of the reassigned position except those that 'no one wants to do'").

Under these principles, Ronen has failed to adequately plead that his protected activity was causally connected to his termination. Ronen's claim is that defendants terminated him at least in part because he had protested a female employee's being fired because she had become pregnant. Pl.'s Opp'n 22 (describing retaliation theory); Second Am. Compl. ¶¶ 49–56 (underlying factual allegations). To substantiate this claim, he relies entirely on the fact that only several months passed between his protesting Schiff's plan to fire the pregnant employee, in September 2020, and his receiving negative performance review in December 2020 and then being fired in January 2021. *See* Second Am. Compl. ¶¶ 52, 55–56, 63, 72. He speculates that defendants did not fire him immediately "because [Schiff] wanted to cover his tracks" by "creat[ing] a paper trail" through the negative performance review. Pl.'s Opp'n 24.

But in the period between Ronen's protected activity and his firing, Ronen received a raise and additional work responsibilities.  Specifically, days after Ronen engaged in the protected activity that forms the basis for his retaliation claim, Schiff gave Ronen a $20,000 raise and began having him perform the responsibilities of the COO.  *See* Second Am. Compl. ¶¶ 38–41.  And in discussions "subsequent" to that, Schiff agreed with Ronen that he "would formally be installed as the COO on January 1, 2021, with an accompanying raise." *Id.* ¶ 42.  These actions are "utterly inconsistent" with a temporal inference that defendants retaliated against Ronen for his protected activity. *Brady*, 113 F.3d at 1424.  And Ronen has not put forward evidence other than temporal proximity that could support an inference that Ronen's objections to another employee's termination were connected to his later termination.

Because Ronen has failed to set out facts making it plausible that his protected complaints about the termination of another employee are causally connected to his termination—under either a "but-for" or "motivating factor" standard—Ronen's retaliation claims under Title VII, the NYSHRL, and the NYCHRL are dismissed.

## CONCLUSION

Ronen's discrimination claims under Title VII and the NYSHRL are dismissed, as are Ronen's claims for retaliation under Title VII, the NYSHRL, and the NYCHRL.  Ronen's claims for associational discrimination and caregiver-status discrimination under the NYCHRL may proceed.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: January 24, 2025
    Brooklyn, New York

22