UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**MATTHEW RONEN**,

*Plaintiff*,

- vs.-

**FLIPCX, INC. F/K/A REDROUTE, INC. and BRIAN SCHIFF, in his individual and professional capacities,**

*Defendants*.

Civil Action No.
1:21-cv-02732 (RPK)

## <u>SUPPLEMENTAL BRIEF ON JUSTICIABILITY OF PLAINTIFF'S CLAIM UNDER THE NYCHRL</u>

**BARCLAY DAMON LLP**
Brian E. Whiteley
Nicholas J. Pompeo
*Attorneys for Defendants*
160 Federal Street, Suite 1001
Boston, Massachusetts 02110
Telephone: (617) 274-2900
Facsimile: (617) 722-6003
Email: bwhiteley@barclaydamon.com
          npompeo@barclaydamon.com

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..............................................Error! Bookmark not defined.

**PRELIMINARY STATEMENT** .................................................................................. 1

**TRIAL EVIDENCE**.................................................................................................... 1

**ARGUMENT**............................................................................................................... 3

  **PLAINTIFF IS NOT ENTITLED TO RELIEF UNDER THE NYCHRL
  AS A MATTER OF LAW**........................................................................................ 3

**CONCLUSION** ........................................................................................................... 9

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Benham v. eCommission Solutions, LLC*,
118 A.D.3d 605 (1st Dep't 2014)...........................................................................................4

*Hoffman v. Parade Publ'ns*,
15 N.Y.3d 285 (N.Y. 2010) ........................................................................................4, 5, 6, 7

*Lieberman v. C.A. Goldberg, PLLC*,
1:21-CV-5053, 2025 U.S. Dist. LEXIS 108771 (E.D.N.Y. Apr. 30, 2025) ..................3, 4, 5, 6

*Ong v. Deloitte Consulting, LLP*,
2025 U.S. Dist. LEXIS 52001 (S.D.N.Y. Mar. 21, 2025) ................................................7, 8, 9

*Pakniat v. Moor*,
192 A.D.3d 596 (1st Dep't 2021)...........................................................................................4

*Shiber v. Centerview Partners LLC*,
21 Civ. 3649 (ER), 2022 U.S. Dist. LEXIS 72710 (S.D.N.Y. Apr. 20, 2022) .........................4

*Smith v. Vera Inst. of Just., Inc.*,
21 CV 6430 (DG), 2023 U.S. Dist. LEXIS 240251 (E.D.N.Y. Aug. 11, 2023)....................4, 5

*Syeed v. Bloomberg L.P.*,
41 N.Y.3d 446 (2024) ................................................................................................6, 7, 8

*Wexelberg v. Project Brokers LLC*,
13 Civ. 7904 (LAK)(MHD), 2014 U.S. Dist. LEXIS 84400 (S.D.N.Y. Apr.
28, 2014) ................................................................................................................6, 7

**Statutes**

State Human Rights Laws..........................................................................................................7

## PRELIMINARY STATEMENT

Defendants FlipCX, Inc. f/k/a/ RedRoute, Inc. and Brian Schiff (together, "RedRoute") respectfully submit this Supplemental Brief on the Justiciability of Plaintiff's Claim Under the NYCHRL, as permitted by the Court's July 21, 2025 Order. The Parties tried this matter to the jury between July 14, 2025 and July 17, 2025, with the jury returning a defense verdict on July 18, 2025.

Left for the Court remains the issue of whether Plaintiff's claim under the NYCHRL was justiciable in the first place. Plaintiff was a resident of Maryland at the time of his termination. He had voluntarily and indefinitely moved out of New York City on November 19, 2020 and stopped having New York City income tax withheld from his paychecks. Plaintiff was ***not*** in Maryland because he was required by the Company to work outside of New York City during the Covid-19 pandemic. He could have stayed in New York City had he wanted. He ***chose*** to leave New York City. In doing so, he consciously relinquished his entitlement to the protections of the NYCHRL at the time of his termination on January 7, 2021, as he no longer felt the impact of any alleged discrimination within New York City. As a result, the Court should dismiss Plaintiff's claim for discrimination under the NYCHRL as non-justiciable.

## TRIAL EVIDENCE

The evidence at trial demonstrated that RedRoute had hired Mr. Ronen in the Spring of 2019. RedRoute afforded him several opportunities within the small company in an effort to support his success despite struggling in each new role that he was offered. Ultimately, Mr. Ronen was not able to meet the company's expectations in any of the positions, and RedRoute terminated him on January 7, 2021. Mr. Ronen claimed that the termination was discriminatory based on him having advised Mr. Schiff in November 2020 that his wife was pregnant with their first child. Mr. Ronen asserted that the termination resulted from his intention to take paternity leave to help care

1

for his wife, who was experiencing complications from her pregnancy. The evidence provided by RedRoute and Mr. Schiff at trial demonstrated that the termination was based upon poor performance.

In mid-November 2020, prior to his termination, Mr. Ronen decided to move with his wife to Maryland, where she had family. He told Sam Krut, a RedRoute co-founder, that he was packing up a U-Haul and he in fact moved belongings to Maryland. Mr. Ronen further testified that he intended to stay approximately 6 months (Tr. Day 1 at 126:16-127:8; Day 2 226:20-227:6). He was not required to move to Maryland as a result of RedRoute's office closure during the Covid-19 pandemic, and in fact, could have remained in New York City.

Mr. Ronen established himself in Maryland well before his termination. He testified that he spent "all of December 2020 and early January 2021 in Rockville" and had "not set foot in NYC after Thanksgiving 2020" (Tr. Day 1 at 127:12-18).

When RedRoute CEO Brian Schiff told Mr. Ronen he was being let go on January 7, 2021 during a Zoom call, Mr. Ronen was seated in his grandmother-in-law's Rockville apartment, a location he said he had used as his remote workspace for "about six weeks" by then (Tr. Day 1 at 136:6-13).

Mr. Krut testified that at the time of Mr. Ronen's termination, RedRoute no longer maintained a New York City office, having given up their Brooklyn lease in the spring of 2020 and was operating fully remotely from then through and beyond the time of Mr. Ronen's termination (Tr. Day 3 at 378:3-9).

Mr. Ronen acknowledged that he had changed or authorized RedRoute to change his address in the company's payroll system from his New York City address to his Rockville,

Maryland address, eliminating New York City tax withholdings after his move. (Tr. Day 2 266: 2-14).

After his discharge, Mr. Ronen testified he did not immediately look for a new job for several months, and then ultimately took a job in Texas and ultimately purchased a home in Potomac, Maryland in April 2023 (Tr. Day 4 278:1-283:14).

As the above demonstrates, the uncontroverted evidence shows that Mr. Ronen chose to move with his wife to Maryland to be close to her family. He did that before the challenged employment decision despite the fact that he had an apartment and could have remained in New York City. As a result, Mr. Ronen lived and worked outside of New York City at all times relevant to his termination.

## **ARGUMENT**

## **PLAINTIFF IS NOT ENTITLED TO RELIEF UNDER THE NYCHRL AS A MATTER OF LAW**

Plaintiff is not entitled to the protections of the NYCHRL as a matter of law, because he was not a resident of New York City at the time of his termination, and did not feel the impact of any alleged discriminatory acts in New York City. Courts have analyzed this issue under multiple standards, including subject matter jurisdiction, failure to state a claim, and more recently, under a justiciability analysis. *See Lieberman v. C.A. Goldberg, PLLC*, 1:21-CV-5053 (ENV) (JAM), 2025 U.S. Dist. LEXIS 108771, at *19-21 (E.D.N.Y. Apr. 30, 2025)(explaining the history of the standard under which Courts have reviewed a non-resident of New York City's claim under the NYCHRL and explaining that, even if the court has subject matter jurisdiction under the diversity statute, "the Court must still consider whether the claims brought by [the Plaintiff] under NYSHRL and NYCHRL 'are cognizable and thus justiciable.'")(quoting *Rinsky v. Cushman & Wakefield, Inc.*, 918 F.3d 8, 18 (1st Cir. 2019)).

"For a non-resident of New York to bring a claim under either NYSHRL or NYCHRL, the non-resident 'must plead and prove that the alleged discriminatory conduct had an impact in New York.'" *Id.* at \*19 (quoting *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 291 (N.Y. 2010)). "The purpose of the impact requirement is to make the NYCHRL 'simple for courts to apply and litigants to follow, lead[ing] to predictable results,' and not necessarily to engage in a fact intensive analysis of all the plaintiff's ties to New York City." *Shiber v. Centerview Partners LLC*, 21 Civ. 3649 (ER), 2022 U.S. Dist. LEXIS 72710, at \*8 (S.D.N.Y. Apr. 20, 2022)(quoting *Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 42 (2d Cir. 2012)). For purposes of the impact test enunciated by the New York Court of Appeals in *Hoffman* (*supra*), a non-resident plaintiff only has a claim under NYCHRL where the impact of the alleged discriminatory act was felt by the plaintiff in New York City. *Id.* at \*8 (citing *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016)).

Generally, to satisfy the impact test, with some inapplicable exceptions, Courts have required that a non-resident be present in New York City at the time the alleged discriminatory act occurred.[1] For instance, in *Smith v. Vera Inst. of Just., Inc.*, 21 CV 6430 (DG) (CLP), 2023 U.S. Dist. LEXIS 240251 (E.D.N.Y. Aug. 11, 2023), *report and recommendation adopted by*, 2023 U.S. Dist. LEXIS 168795 (Sept. 18, 2023), the Court found that the non-resident plaintiff failed to satisfy the impact test for his NYCHRL retaliation claim, because he was not present in New York City when the retaliation occurred. The plaintiff in *Smith* began employment with the Vera Institute in Brooklyn, New York in October 2016. *Id.* at \*3. When he started his employment there, he lived in New York City and worked at the Vera Institute's Brooklyn office. However, by January 2018, he had relocated to Baltimore, Maryland, where he continued to work for the Vera Institute

---

[1] *See Pakniat v. Moor*, 192 A.D.3d 596 (1st Dep't 2021)(rejecting application of NYCHRL to worker in Montreal even where discriminatory conduct occurred in New York); *Benham v. eCommission Solutions, LLC*, 118 A.D.3d 605, 606 (1st Dep't 2014)(finding that decisive factor of whether Plaintiff had viable claim under NYCHRL turns "primarily on her physical location at the time of the alleged discriminatory acts . . . .").

remotely. *Id.* The plaintiff's duty station continued to be New York City, and he had daily interactions with staff in New York City and regularly traveled to New York City for work-related meetings. *Id.*

The *Smith* Court found that the retaliatory actions against plaintiff, which all occurred remotely while plaintiff was working from home in Maryland, were insufficient to establish a right to relief under NYCHRL. *Id.* at *40 ("Without any additional allegations to suggest that any of the action were experienced by plaintiff while he was in New York or otherwise impacted plaintiff in New York, such conduct is insufficient to satisfy the impact analysis.") (citing *Mayer v. Neurological Surgery, P.C.*, No. 15 CV 864, 2015 U.S. Dist. LEXIS 197158, at *6-7 (E.D.N.Y. Dec. 21, 2015)). In contrast, the Court permitted the *Smith* plaintiff's discrimination claim to proceed under NYCHRL because he was ***physically present*** in New York at the meeting where the discrimination occurred and felt the discrimination in person in New York. *Id.* at *37 ("Altogether, plaintiff has alleged sufficient facts to suggest that he was disparately treated on the basis of his race during this meeting and that he felt the impact of that treatment immediately in defendant's corporate office in New York City.")

The Court in *Lieberman* (*supra*) likewise found that a lawyer, employed in New York City but working remotely in Rhode Island, could not satisfy the impact test. The Court explained that "[c]ritically, Lieberman, like the plaintiff in *Hoffman*, cannot identify any discriminatory conduct that occurred when she was in New York; each of the material incidents underlying her discrimination claim – where Carrie justified the non-payment of her bonus by referring the negative impact of the concurrent parental leave on the Firm's finances – occurred over the phone, email, or Zoom, while Lieberman was working from Rhode Island." *Id.* at *21-22. The Court granted summary judgment on the NYCHRL claims, explaining that the plaintiff's "failure to

connect any of the alleged discrimination to her presence in New York is fatal to Lieberman's claims." *Id.* at \*22.

Mr. Ronen's NYCHRL claims fall squarely within those precedents that have dismissed claims because the plaintiff felt no impact of the allegedly discriminatory acts in New York City. RedRoute's office was remote starting on March 12, 2020, and RedRoute had no office in New York City from April 2020 to February 2021. While Plaintiff initially worked remotely during this time from New York City, he moved to Maryland in November 2020 on his own volition, stopped having New York City income tax withheld from his paychecks and continued to work from there until he was terminated. He did this so that he would not have to pay rent in New York City. Plaintiff was in Maryland at the time of his termination, and he has alleged no other incidents of discrimination where he was physically in New York City when the discrimination occurred.

Plaintiff is likely to argue that his circumstances fall within a "grey area" identified by the Court in *Wexelberg v. Project Brokers LLC*, 13 Civ. 7904 (LAK)(MHD), 2014 U.S. Dist. LEXIS 84400 (S.D.N.Y. Apr. 28, 2014), and in particular that his assertion he intended at some indefinite time in the future to return to New York City distinguishes his claims from the *Hoffman* line of cases, and that the Court should instead follow the Court of Appeals precedent in *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 451 (2024) for his claim. Plaintiff is simply wrong. Neither *Wexelberg* or *Syeed* are applicable here.

In *Wexelberg*, the Court found that the plaintiff's claims fell within a grey area on the impact analysis because the Plaintiff, who lived in New Jersey, was ***ordered*** to work remotely from home by his employer. *Id.* at \*34-35. The Court was leery of creating a loophole whereby an employer could avoid the application of the NYCHRL by "directing a targeted employee to do his work at home rather than at the New York office where he normally works, and then terminating

him a few days or weeks later . . . ." *Id.* at \*35. Unlike the plaintiff in *Wexelberg*, Mr. Ronen **chose**

**to move** to Maryland to for his own personal reasons. This simple but overarchingly distinguishing

fact renders *Wexelberg* and its progeny cited by Plaintiff entirely irrelevant. Plaintiff could have

remained in New York City and worked remotely from his apartment there, as he did from March

12, 2020 through mid-November 2020. Thereafter, he chose to move to work remotely from

Maryland.

The Court of Appeals decision in *Syeed* is even further removed from the facts of this case,

as it deals with the application of NYCHRL claims to non-residents in failure to hire and failure

to promote claims. *See Syeed*, 41 N.Y.3d at 452 ("The Second Circuit has asked us to explain how

*Hoffman's* impact test governs a situation where, **as here a nonresident plaintiff alleges a failure**

**to promote or hire**. We conclude that the City and State Human Rights Laws protect nonresidents

who proactively sought an actual New York City- or State-based job opportunity.") (emphasis

supplied). Plaintiff's claim here is a wrongful termination case governed by *Hoffman*, not a failure

to promote or hire claim, governed by *Syeed*. Plaintiff cannot legitimately argue that *Syeed* should

apply to his claim, since Defendants' conduct did not prevent Plaintiff from working in New York,

since he voluntarily moved away from New York prior to his termination.

This fact is illustrated in *Ong v. Deloitte Consulting, LLP*, 2025 U.S. Dist. LEXIS 52001

(S.D.N.Y. Mar. 21, 2025) where the Southern District of New York rejected application of *Syeed*'s

standard to facts nearly identical to the present dispute. The plaintiff in *Ong* was hired to work in

the defendant's New York City office and she moved to New York City to perform her job tasks

and held a United States Green Card at the time. *Id.* at \*2. The plaintiff informed her employer in

March or April 2017 that she was pregnant. *Id.* at \*4. In October 2017, the plaintiff moved to

London and stopped paying rent in her New York City apartment. *Id.* at \*11. The plaintiff asserted

in an affidavit on summary judgment that she "never intended to move to London permanently" and that "she intended to return to New York City after her 'maternity leave ended.'" *Id.* at *11-12. The plaintiff then stopped working in October 2017 to take a month of paid leave in advance of her due date in November 2017. *Id.* at *13. The plaintiff was further diagnosed with recurrent breast cancer while in London and underwent surgery for the disease while she was out on parental leave. *Id.* at *13-14. The *Ong* plaintiff then filed a discrimination complaint concerning the defendant's treatment of her during negotiations over what type of leave would be available to her as a result of her parental leave and cancer diagnosis. She also claimed to have been discriminated against by being removed from a project before she took parental leave.

In analyzing whether plaintiff could seek relief under the NYCRHL for her disability discrimination claims (which occurred after she moved to London), the Court rejected application of the *Syeed* precedent even where the plaintiff claimed that the discrimination prevented her from returning to her job in New York City. Specifically, although the plaintiff argued that "Deloitte's alleged discrimination had an impact in New York 'because it prevented Plaintiff from working in New York,'" *Id.* at *50, the court found the plaintiff's claim "untenable" "given the undisputed facts before the Court." *Id.* The Court explained:

> Ong *was* hired to work in New York. [. . .] She later chose to move to London before giving birth to her child and to stay indefinitely thereafter, in violation of 'strict[]' company policy. [. . .] As discussed above, Deloitte did not prevent Ong from returning to New York, where she led Deloitte to believe she remained. [. . .] Ong could have 'relocate[d]' at any time while she was collecting her full salary from her New York-based employer.

*Id.* (citing *Syeed*, 41 N.Y.3d at 453) (emphasis original). The court further discounted her assertion that she intended to return to New York city as "self-serving," explaining that it is "belied by the record, including [her] own testimony that she never made any arrangements to return." *Id.* In

8

finding that the plaintiff could not invoke the protections of the NYCHRL under these facts, the

Court continued:

> The NYSHRL an NYCHRL protect individuals who live or work in New York or who were 'discriminatorily denied the opportunity' to work and live in New York. [. . .] Ong, **by contrast**, was hired to work in New York **but chose to move abroad**. Ong fails to offer a scintilla of evidence that Deloitte's alleged failure to accommodate her had any 'impact' in New York beyond her own conclusory and wholly unsupported assertion that she would have returned to New York if Deloitte had granted her requests to work remotely or part time.

*Id.* (citations omitted) (emphasis supplied).

Plaintiff cannot escape the fundamental truth that neither RedRoute nor the Covid-19 pandemic forced him to work remotely from Maryland. He consciously chose to move out of New York City to live in Maryland with his family. In doings so, he felt no impact of any alleged discrimination as a result of Defendants' conduct in New York City. As such, the Court should dismiss his NYCHRL claims with prejudice, as he did not feel the impact of any alleged discriminatory conduct in New York City.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants RedRoute, Inc. and Brian Schiff respectfully request the Court dismiss the Plaintiff's NYCHRL claim as he was not a resident of New York City at the time of his termination and did not feel the impact of his termination in New York City.

9

Dated**:** July 30, 2025                    **BARCLAY DAMON LLP**

By: */s/ Nicholas J. Pompeo, Esq.*
Brian E. Whiteley, Esq.
Nicholas J. Pompeo, Esq.
160 Federal Street, Suite 1001
Boston, Massachusetts 02110
Telephone: (617) 274-2900
Facsimile: (617) 722-6003
bwhiteley@barclaydamon.com
npompeo@barclaydamon.com