UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

MATTHEW RONEN,

                  Plaintiff,                      **MEMORANDUM AND ORDER**
                                                 21-CV-2732 (RPK) (RML)

        v.

FLIPCX, INC., *formerly known as
RedRoute, Inc.*, and BRIAN SCHIFF,

                  Defendants.

-----------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      Plaintiff Matthew Ronen alleged in this action that his former employer engaged in disability and caregiver-status discrimination in violation of the New York City Human Rights Law ("NYCHRL") when it terminated his employment. The week before trial, defendants moved to dismiss plaintiff's NYCHRL claims for lack of jurisdiction, arguing that plaintiff could not demonstrate an impact in New York City from his firing because he was working in Maryland at the time of the termination. As explained below, plaintiff suffered an impact in New York City from his firing, and the Court may therefore enter judgment on the jury verdict in favor of defendants.

## PROCEDURAL HISTORY

      Plaintiff sued his former employer—a company called RedRoute, Inc. (later renamed FlipCX, Inc.) and its CEO Brian Schiff—for discrimination and retaliation under city, state, and federal law. Two claims survived defendants' motion to dismiss: a claim that defendants had discriminated against plaintiff on the basis of caregiver status in violation of the NYCHRL and a claim that defendants had discriminated against plaintiff based on his association with a disabled

person in violation of the same statute.  *See* Second Am. Compl. ¶¶ 78–107 (Dkt. #12).  *See generally* Jan. 24, 2025 Mem. & Order (Dkt. #45).  In a nutshell, plaintiff alleged in these claims that defendants terminated his employment because he was planning to take paternity leave to care for his pregnant spouse, who was experiencing pregnancy complications.  *See* Jan. 24, 2025 Mem. & Order 15–18.

The week before trial was slated to begin, defendants filed a letter asserting—for the first time—that although the operative complaint alleged plaintiff was "employed in Brooklyn, New York," *see* Second Am. Compl. ¶ 7, plaintiff had moved to Maryland and was working remotely before he was terminated, *see* Defs.' Pretrial Impact Ltr. 1–2 (Dkt. #93).  As a result, defendants argued that plaintiff would not be able to prove he experienced an "impact" from his allegedly discriminatory termination within the boundaries of New York City—a required element of plaintiff's NYCHRL claims.  *See* Defs.' Pretrial Impact Ltr. 1–2; *Hoffman v. Parade Publ'ns*, 933 N.E.2d 744, 746–48 (N.Y. 2010).

The parties and the Court agreed that the Court would hear evidence on the issue of impact alongside the evidence on the other elements at the trial scheduled for the following week.  *See* Final Pretrial Conf. Tr. 18:15–19:23.  The parties and the Court further agreed that the impact element—which has been characterized by the New York Court of Appeals as jurisdictional, *see Hoffman*, 933 N.E.2d at 748—would be decided by the Court based on that trial evidence, rather than by the jury.

After a one-week trial, the jury found for defendants on the merits of plaintiff's discrimination claims.  *See* Jury Verdict (Dkt. #107).  The Court reserved decision on the issue of impact to permit the parties to submit supplemental briefing, which has now been completed.  *See*

Trial Tr. 751:17–752:11; Pl.'s Supp. Impact Ltr. (Dkt. #109); Defs.' Supp. Impact Mem. (Dkt. #110).

## FINDINGS OF FACT

Plaintiff Matthew Ronen worked for RedRoute from March 2019 until his termination in early January 2021.  *See* Trial Tr. 155:1–9, 422:9–11.  Plaintiff's testimony at trial as to the impact of his termination in New York City, which the Court found credible, constituted the bulk of the trial evidence on the impact issue. The Court excluded from consideration several documents produced by defendants on the eve of trial as evidence relevant to whether plaintiff intended to return to New York following his move to Maryland.  As explained on the record, those documents were not timely produced in accordance with defendants' discovery obligations and were not identified as anticipated exhibits on the joint pretrial order.  *See id.* at 559:13–20, 615:13–17; *see also Funk v. Belneftekhim*, 861 F.3d 354, 370–72 (2d Cir. 2017).

From the time of plaintiff's hiring in March 2019 through March 2020, plaintiff lived in New York City with his wife and worked out of RedRoute's office in Brooklyn.  *See* Trial Tr. 43:14–17, 123:18–19, 124:23–125:1, 507:24–508:4.  In March 2020, due to the onset of the Covid-19 pandemic, RedRoute advised all employees that the company would be moving to remote work. *See id.* at 125:11–14.  Beginning in March 2020, plaintiff would alternate between working in New York and working in Maryland, where his wife had grown up and where her family was located. *See id.* at 125:15–126:2, 357:1–4, 268:23–269:2, 321:6–16.

In November 2020, plaintiff and his then-six-months-pregnant wife moved on a full-time basis to Maryland, into an apartment owned by the grandmother of plaintiff's wife.  *See id.* at 107:19–109:5, 127:16–128:18, 268:5–7, 544:6–16.  Afterward, plaintiff worked remotely from Maryland.  *See id.* at 128:12–15.  Plaintiff moved principally so that his wife could give birth

closer to her family, but the ongoing pandemic requiring RedRoute employees to work remotely also played a role in the decision. *See id.* at 108:1–16. The move was intended to be temporary: plaintiff and his wife intended to stay in Maryland for around five to six months, long enough for the baby to arrive. *See id.* at 128:4–12. Plaintiff credibly testified that, but for his termination, he "absolutely" would have returned to New York City after that time. *See id.* at 108:17–19, 116:17–117:6. As evidence of his intent to return, plaintiff cited the facts that he and his wife kept their apartment lease in New York City, kept their doctors in New York City, and continued to make charitable donations to New York City–based institutions. *See id.* at 108:20–109:1, 267:22–268:2, 284:22–285:2. He also explained that residing long-term with his wife's grandmother would have been impractical due to her elderly age. *See id.* at 116:20–117:6.

On January 7, 2021, before plaintiff's child was born, defendants terminated plaintiff's employment at RedRoute. *See id.* at 40:10–13, 107:3–5. Plaintiff received Schiff's call terminating his employment in Maryland. *See id.* at 136:6–9, 544:22–545:2. As a result, plaintiff and his wife were unable to move back to New York as planned; instead, they moved in with the parents of plaintiff's wife in Maryland, which was "incredibly hard on everybody." *See id.* at 116:17–117:6. Plaintiff has not returned to live in New York City since then. *See id.* at 137:3–6.

After RedRoute closed its Brooklyn office due to the pandemic, the company allowed its lease to expire. *See id.* at 363:4–14, 376:16–23. But later in 2021 or 2022, the company reopened office space, in the form of a sublease, elsewhere in New York City. *See ibid.*

## CONCLUSIONS OF LAW

To bring a discrimination claim under the NYCHRL, a plaintiff must establish some impact from the allegedly discriminatory conduct within the City's boundaries. *See Syeed v. Bloomberg L.P.*, 235 N.E.3d 351, 354 (N.Y. 2024) ("*Syeed*"); *Hoffman*, 933 N.E.2d at 746. Whether this

requirement is jurisdictional in federal court is not obvious.  The New York Court of Appeals has stated that a claim that fails to satisfy the impact requirement is "properly dismissed . . . for want of subject matter jurisdiction."  *Hoffman*, 933 N.E.2d at 748.  But whether state jurisdictional rules can override federal diversity jurisdiction is unsettled.  *Compare Moodie v. Fed. Rsrv. Bank of N.Y.*, 58 F.3d 879, 884 (2d Cir. 1995) ("[A] state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim."), *with Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.*, 550 F.2d 1320, 1325 (2d Cir. 1977) ("The *Erie* doctrine does not extend to matters of jurisdiction.") (quoting *Markham v. City of Newport News*, 292 F.2d 711, 718 (4th Cir. 1961)).  I need not wade into that issue because, as explained below, plaintiff experienced an impact from his termination in New York City.  As a result, if the test is jurisdictional, the Court has "satisf[ied] itself that it has jurisdiction."  *Riley v. Bondi*, 145 S. Ct. 2190, 2201 (2025).  If the test is not, then this Court maintains its jurisdiction over this dispute and may decide the issue because the parties have consented to the Court's doing so.  Trial Tr. 582:9–585:6.

In *Syeed*, the Court of Appeals held that there are two ways in which a nonresident may satisfy the impact requirement for NYSHRL claims: "(1) working in New York or (2) establishing that the challenged conduct had some impact on the plaintiff within the respective New York geographic boundaries."  *Syeed*, 235 N.E.3d at 354.  *Syeed* further made clear that one way of demonstrating impact is showing that a defendant's unlawful acts denied the plaintiff the opportunity to work in and potentially relocate to New York City.  *Id*. at 355.  The plaintiff in *Syeed* was employed in the defendant-corporation's Washington, D.C. office.  *See id.* at 353.  She sought a transfer to a position based in New York City, which she was denied, allegedly due to her race and sex.  *See ibid.*  On certification from the Second Circuit, the New York Court of Appeals

reasoned that "[t]he prospective employee personally feels the impact of a discriminatory refusal to promote or hire in New York City . . . , because that is where the person wished to work (and perhaps relocate) and where they were denied the chance to do so." *Id.* at 355.

Defendants argue that *Syeed* governs only "failure to promote or hire" cases, as distinct from "wrongful termination case[s]" like this one. Defs.' Supp. Impact Mem. 7. But *Syeed*'s reasoning applies in the unlawful-termination context, because the Court of Appeals made clear that the discriminatory denial of "the chance to work, and perhaps live" within New York City constitutes an impact within New York City. *Syeed*, 235 N.E.3d at 355. The Court of Appeals distinguished a case finding no impact in the context of an unlawful-termination claim—*Hoffman v. Parade Publications*, *supra*—because the plaintiff there had alleged no such denial. Specifically, the *Syeed* court emphasized that the plaintiff in *Hoffman*, in addition to not being a New York City inhabitant, "did not seek to become one" and instead "wished to retain his Georgia employment." *Syeed*, 235 N.E.3d at 355. Consistent with this understanding of *Syeed*, at least two district courts have found a plaintiff alleging unlawful termination adequately pleaded impact by alleging that the termination denied the plaintiff the opportunity to work or live in New York. *See Roddey v. KPMG L.L.P.*, No. 22-CV-7405 (VSB), 2025 WL 1104538, at *8–9 (S.D.N.Y. Apr. 14, 2025); *Shiber v. Centerview Partners LLC*, No. 21-CV-3649 (ER), 2024 WL 3274420, at *3–4 (S.D.N.Y. July 2, 2024).

Under *Syeed*, the evidence at trial shows that plaintiff experienced an impact in New York City from his termination. Thanks to the confluence of the Covid-19 pandemic, RedRoute's shutdown of its Brooklyn office, and the impending birth of his child, plaintiff relocated to Maryland beginning in November 2020 to be closer to his wife's family. He was ultimately terminated in early January 2021 while working from Maryland. But plaintiff credibly testified

that he always intended to return to New York City just a few months after his child was born, citing as evidence the facts that he and his wife maintained their apartment lease in New York and that he and his wife kept their doctors in New York.  Like the plaintiffs in *Roddey* and *Shiber*— and unlike the plaintiff in *Hoffman*—plaintiff here lost "an actual job opportunity based in New York City" that he had every intention of returning to because of defendants' allegedly discriminatory conduct.  *See Shiber*, 2024 WL 3274420, at \*4 (citation omitted).

*Smith v. Vera Institute of Justice, Inc.*, No. 21-cv-6430 (DG) (CLP), 2023 WL 11879682 (E.D.N.Y. Aug. 11, 2023), *report and recommendation adopted*, Order dated Sept. 18, 2023, on which defendants rely, is inapposite.  For one, the Court decided that case before the New York Court of Appeals' decision in *Syeed*.  For another, the plaintiff in *Smith* expressed no intent to work in New York.  *See id.* at \*1.  He permanently worked from Maryland and returned to New York in conjunction with work assignments.  *Ibid.*  That is a far cry from the plaintiff in this case, who intended to return to New York until his termination allegedly prevented him from moving back.  That deprivation—of "the chance to work, and perhaps live, within" New York City—is precisely the type of injury the NYCHRL countenances.  *Syeed*, 235 N.E.3d at 355.

As a fallback, defendants challenge the sincerity of plaintiff's intent to return to New York following his move to Maryland.  As previously explained, the Court found plaintiff's testimony on this topic to be credible and concludes, based on the evidence admitted at trial, that plaintiff did have concrete plans to return to New York following the birth of his child.  Plaintiff's self-expressed intent to return to New York is bolstered by the fact that he had worked from New York for most of his tenure at the firm prior to his relocation and the fact that he and his wife maintained significant connections to New York during his absence.  These facts differentiate plaintiff from other claimants who left New York and offered merely "self-serving and conclusory" assertions

of their intent to return.  *See, e.g.*, *Ong v. Deloitte Consulting, LLP*, No. 21-cv-2644 (MKV), 2025 WL 886947, at *16 (S.D.N.Y. Mar. 21, 2025).  Accordingly, the impact requirement is satisfied.

## CONCLUSION

For the foregoing reasons, plaintiff proved by a preponderance of the evidence at trial that he experienced an impact from his termination within New York City.  The Court therefore may enter judgment for defendants on the merits based on the jury verdict.  A separate judgment will issue.

SO ORDERED.

 */s/  Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 8, 2025
Brooklyn, New York